(No. 33448.—

HARVEY LANGGUTH *et al.,* Appellees, *vs.* THE VILLAGE OF MOUNT PROSPECT, Appellant.

*Opinion filed February 16, 1955.*

FRANK M. OPEKA, of Mount Prospect, for appellant.

FRANK P. ZALESKI, of Chicago, for appellees.

Mr. CHIEF JUSTICE BRISTOW delivered the opinion of the court:

This cause arrives here from the circuit court of Cook County wherein a judgment order was entered declaring a zoning ordinance invalid as it related to plaintiffs' real estate. This appeal is brought direct to this court upon the certificate of the trial judge that the validity of the municipal ordinance is involved and that public interest requires that the appeal be brought direct to this court.

Harvey Langguth and Harvard Langguth, plaintiffs, filed their complaint for declaratory judgment which alleged the following: That they are the owners of lots 22 and 23 in block 20 in Mount Prospect, Illinois, consisting of two lots 25 x 138 feet each, located on the west side of Owen Street, 165 feet 7 inches north of the Northwest Highway in the village of Mount Prospect, which is located 20 miles northwest of the city of Chicago, and that said real estate is vacant; that there is now in effect a zoning ordinance of the village of Mount Prospect adopted on December 4, 1923, containing six zoning districts; that under the original ordinance and also under a blanket amendment thereto adopted on May 6, 1944, said real estate is zoned R-2 duplex residence, as is the entire block of which said real estate is a part; that, thereafter, on April 17, 1951, pursuant to petition of the then owners of said real estate after a public hearing and recommendation of the village zoning commission, the village board adopted ordinance No. 343, reclassifying their real estate, together with other real estate, from R-2 duplex residence to B-busi-

ness; that while said amendatory ordinance was still in effect, the plaintiffs, on or about July 23, 1951, purchased the above described real estate and paid a valuable consideration therefor; that on December 11, 1951, the village board, having previously referred the question of rezoning plaintiffs' property to the zoning commission which conducted a hearing and made its, report making no recommendations, arbitrarily adopted ordinance No. 360 under which the above real estate is purportedly rezoned as R-2 duplex residence; that no changes occurred in the physical status of the above real estate between the date of the passage of ordinance No. 343 on April 17, 1951, zoning said premises as class B and the date of passage of ordinance No. 360 on December 11, 1951, rezoning said premises as R-2, except that a gasoline service station was erected on the premises adjoining said real estate on the south. It is further alleged in the complaint that the highest and best use for the property in controversy is for business purposes; that the real estate herein is not adapted to or suitable for single-family residential purposes because of its proximity to the heavily traveled highway, public, industrial and commercial institutions and the Chicago and North Western railroad; that said zoning deprived plaintiffs from using said property for its highest and best use and from using it for any other purpose except the uses permitted by the residential classification under said ordinance; and that the instant ordinance under attack constitutes an unreasonable exercise of police power and is therefore invalid.

The defendant filed an answer denying all of the affirmative allegations in the complaint and alleging that the village was in error in including all of plaintiffs' lots in the commercial classification appearing in ordinance No. 343 and that ordinance No. 360 was enacted to rectify that mistake, thus returning plaintiffs' property to a residential

classification. By this proceeding the owners of the instant property seek to restore the zoning regulations that were in effect when they purchased their property.

Although the record fails to show this in appellant's brief, it is indicated that the proof adduced herein was not taken in the presence of the trial judge, consequently he was without the advantage of seeing and hearing the witnesses. After argument of counsel upon the transcript, the lower court entered findings and judgment for plaintiffs granting relief as prayed. There is no conflict in the proof appearing in this record. Weighing the same presents no problem, only an interpretation of it in the light of applicable zoning principles.

An amendment to a zoning ordinance, in order to be valid, must bear some relation to or enhancement of the public health, safety, morals, comfort or general welfare, and cannot be sustained unless it does bear such relation. (*Kinney* v. *City of Joliet,* 411 Ill. 289, 295.) If the gain to the public is small, from a rezoning of real estate, and the hardship to the owner is great, no valid reason exists for the exercise of such police power. (*Pioneer Trust & Savings Bank* v. *Village of Oak Park,* 408 Ill. 458, 465.) Persons who purchase real estate have a right to rely upon the zoning classification at the time of purchase—that it will not be changed except for the public good. (*Wesemann* v. *Village of La Grange Park,* 407 Ill. 81.) The power to zone real estate by municipal authorities is not unfettered, and the courts have the power to review the question of the reasonableness of all zoning ordinances. *Quilici* v. *Village of Mount Prospect,* 399 Ill. 418.

Briefly, these are the uncontroverted facts: Harvey Langguth and his son, Harvard Langguth, sought for a long time to find a suitable site on which to erect a filling station. They were hopeful of procuring a tract of land of such dimensions that the gas and oil business could be expanded to include other kindred enterprises if conditions

in the area recommended such further development. They finally settled upon the instant property if the seller could have it rezoned for commercial purposes. This was accomplished as we have heretofore indicted by zoning ordinance No. 343, enacted April 17, 1951. On July 30, 1951, plaintiffs purchased the lots, immediately sought financing and the preparation of plans to erect their service station. Permits to build were applied for and issued on September 19, 1951, its erection commenced shortly thereafter and completed in May, 1952. The property consists of lots 22, 23, 24, 25, 26 and 27, all adjoining and lying north and south, lot 22 being northernmost and lot 27 southernmost, all in block 20 in Mount Prospect, Illinois. They face Owen Street on the east, an alley on the west and Northwest Highway on the south. All but lot 27 are 25 feet wide and 120 feet long. Lot 27 has a frontage on Northwest Highway of 161 feet, 90.5 feet on Owen Street and 16 feet on the alley. The service station structure was erected on lots 24, 25 and 26. The north end of the building is five feet south of the north line of lot 25. On lot 23 is a bin for storing oil drums and rear axles which can be used in the overhauling business. Occasionally automobiles, trucks and mobile equipment are stored on lots 22 and 23. These are the lots as to which plaintiffs desire to have the zoning classification changed so that they may be used for commercial purposes.

Proceeding northward from plaintiffs' property on Owen Street, which runs north and south and is not heavily traveled, there are eleven homes on the west side of the street and a like number on the east side. Only one of these property owners, Mary Steinmiller, testified at the hearing for the defendant. It was her opinion that their home lying immediately north of lots 22 and 23 had depreciated in value since the building of plaintiffs' service station, and that there would be a further reduction in value if commercial uses were permitted on these lots. The

validity of the zoning ordinance permitting the construction of the service station is not here challenged.

H. M. Cornell of Park Ridge, Illinois, a realtor of considerable experience and the only expert testifying, was called by the plaintiffs. He testified that Northwest Highway was rapidly becoming a commercial street, that automobile and truck traffic thereon was becoming increasingly heavy; that adjoining and running parallel with it on the south are the tracks of the Chicago and North Western Railway Company; that the passenger and freight traffic thereon is almost continuous in the morning and evening and that lots 22 and 23 have but one valuable use and that is as a part of the filling station project. With reference to the value of the lots for residential purposes he said: "As for value of these lots, considering all the circumstances, from a practical standpoint, I doubt if you could find an experienced builder who would build a residence on these two lots even if you gave him the property for nothing."

Taking into consideration the plats, the maps, the photographs and the uncontradicted proof, it is evident that lots 22 and 23 have very little desirability for residential purposes. It is also equally clear that commercial use of the remainder of plaintiffs' property would do very little, if any, damage to other property owners in the neighborhood. The questioned ordinance must have a real substantial relation to the public health, safety, morals or general welfare. If the gain to the public is slight and the loss to the individual property owner is substantial, the regulation is not a proper exercise of the police power and is consequently invalid. We think the trial court court was correct in making this determination.

*Judgment affirmed.*