(37262

MUTUAL NATIONAL BANK OF CHICAGO, Trustee, Appellee, *vs.* THE CITY OF CHICAGO, Appellant.

*Opinion filed November 30, 1962.*

John C. Melaniphy, Corporation Counsel, of Chicago, Sydney R. Drebin and Allen Hartman, Assistant Corporation Counsel, of counsel,) for appellant.

Jack M. Siegel and Thomas A. McGloon, both of Chicago, for appellee.

Mr. Chief Justice Solfisburg delivered the opinion of the court:

The circuit court of Cook County entered a declaratory judgment finding that the provisions of the Chicago zoning ordinance, as it applied to certain property, were void. The trial judge certified that the validity of a municipal ordinance was involved and that the public interest required a direct appeal to the Supreme Court. The city prosecutes this appeal.

The property which is involved here is a vacant tract located on the southeast corner of 104th Street which runs east and west, and Pulaski Road, which runs north and south. The property has a frontage of 154 feet along Pulaski Road and 300 feet along 104th Street. Under the 1957 zoning ordinance of the city of Chicago, this property was zoned for single-family use. The property was purchased by the present owners in June of 1960 and the legal title was held in the name of the appellee bank under a land trust. After these owners had owned the property for about a year they applied to the city council to change the zoning so as to

permit the building of apartments but the council refused the application and this suit followed.

The physical facts with respect to the location of the property and the zoning of other property in the area are not in conflict and we shall briefly summarize them. The block in which this property is located is zoned entirely for single-family residences and 48 such residences have been built in this block. The residences to the east of the property front on 104th Street and the side yard of the house immediately to the east of this property abuts on the property. The residences immediately to the south of this property face on a dead-end street known as 104th Street Place, which runs off of Pulaski Road to the east, and the back yards of these residences abut on the subject property. In the same block, to the south of 104th Street Place there are other residences which face 104th Street Place and to the south of these are residences facing 105th Street. None of the residences in the block face Pulaski Road. Along the east side of Pulaski Road to the south the area is zoned for single-family use for another block. For about 2 blocks farther south on Pulaski Road the property is zoned so as to permit business uses and is actually developed with numerous uses such as supermarkets, barbershops, gas stations, *etc.*

Pulaski Road at this point is the western boundary of the city of Chicago, and the territory across Pulaski Road to the west is in the village of Oak Lawn. About a block northwest of the subject property on the Oak Lawn side of Pulaski Road, there are five apartment buildings, some of which front on Pulaski Road, and some of which face 103rd Street. Diagonally opposite the subject property, in Oak Lawn, is a large supermarket and parking lot. Directly across Pulaski Road to the west, between 104th and 105th Street, are two new apartment buildings in the process of construction, and south of 105th Street in Oak Lawn, fronting on Pulaski Road, are a gas station and garden center.

Across the street to the north of the subject property

there is a restaurant on the corner of 104th Street and Pulaski Road. Immediately to the east of the restaurant on 104th Street there is a turn-around area for Chicago buses. Along Pulaski Road in the block immediately north of the subject property there are business uses such as a laundromat, drug stores, liquor stores, *etc.*, some of which have apartments above the commercial uses. For 2 blocks north of 103rd Street the property on the east side of Pulaski Road is zoned to permit multiple-family dwellings of the type sought by the owners here.

One of the owners testified that he was in the real-estate development business. He testified that he had made efforts to develop the subject property for single-family use by advertising in the newspapers and by showing prospective buyers some model houses which were located on other property and by telling these prospects that similar houses could be built on the subject property. He testified that he was unable to sell any of the property for single-family use. The witness testified that the development which he proposed to build on the property consisted of 4 apartment buildings containing a total of 48 apartments. Parking would be provided for all of the tenants. The total value of the land and buildings would be about $650,000 and in the opinion of the witness, the value of the land, if developed as a part of this program, would be approximately $90,000. The witness testified that the value of the land for single-family use was between $48,000 and $55,000, although he did not receive any offers to buy at that price. An expert witness for the owners testified that at the time the zoning ordinance was adopted in 1957 he was director of the Staff Rezoning Study Group and that he had recommended that the subject property be zoned for single-family use. He testified that the changing character of the neighborhood, and particularly the development of business establishments and apartment houses along Pulaski Road, had led him to change his mind. He was of the opinion that the highest and best use of the

property now, from a planning and zoning standpoint, was for apartment purposes. He testified that an apartment development for the subject property would have little effect on the value of the residences near the property.

The witnesses for the city expressed no opinion as to the value of the property. Several owners of single-family residences in the vicinity testified for the city that in their opinion the values of their property would depreciate if the apartments were built on the subject property. An expert witness testified for the city that, in view of the residential zoning to the east and south of the subject property, single-family residential zoning was the most appropriate for the property, although he admitted that the presence of apartments on the Oak Lawn side was not conducive to the development of the subject property for single-family use.

We do not believe that it is necessary to set forth in this opinion all of the rules of law which have been developed in zoning cases, since these rules are now well settled and the problem in these cases is in applying the rules of law to the facts of each case. A good summary of the factors to be considered in these cases may be found in the recent case of *Hartung v. Village of Skokie,* 22 Ill.2d 485. We have considered the evidence in the record together with these principles and are of the opinion that the trial court was correct in its ruling. This property is a corner lot and the properties on the other three corners are devoted to business or apartment uses. We think it is clear that the character of the property involved here is determined by the business uses on the other corners of the intersection and the uses along Pulaski Road rather than the residential uses in the block in which the property is located. The gain to the public from a continuance of the existing zoning is small compared to the substantial loss to the owners of this property. The judgment of the circuit court of Cook County is therefore affirmed.

*Judgment affirmed.*