JOHN O'CONNOR, as Trustee, Plaintiff-Appellee, *v.* THE VILLAGE OF PALOS PARK, Defendant-Appellant.

(No. 58995; ▮)

First District (2nd Division)—August 5, 1975.

Ebers, Metskas, Bjorvik & Kyros and Associates, of Chicago, for appellant.

Daniel L. Houlihan and C. W. Eckert, both of Chicago, for appellee.

530

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

This is the appeal of a municipality, sued by an owner of land who sought a judgment declaring that a zoning ordinance as applied to his property was unconstitutional. The trial court, after disposing of preliminary motions, receiving evidence and hearing arguments of counsel, ruled for the owner. From this ruling, three issues are presented for our review. 1. Whether the owner, before filing this suit for declaratory judgment, exhausted his local and administrative remedies because a purchaser with whom he contracted to sell the land, without notice to the municipality that the action was on behalf of the owner, pursued the available remedy by applying for a zoning change. 2. Whether the owner proved that he had sustained or was going to sustain injury because of application to his property of the zoning classification about which he complained. 3. Whether the evidence on which the trial court ruled in favor of the land owner overcame the presumption that the zoning classification in question was valid.

In 1949, John C. O'Connor platted and recorded the John R. O'Connor's Palos Park Subdivision in Cook County consisting of 53 lots, each having an area of approximately one-half acre, all located in the Village of Palos Park, Illinois. Between then and June 4, 1971, the entire subdivision, except Lots 27, 28 and 50, was sold despite the fact that signs announcing the three lots for sale were displayed continually. The first two, 27 and 28, formed a triangular or pie-shaped parcel of land at one end of a six-corner intersection that had 119th Street bordering it on the north and Southwest Highway, Illinois Route 7, bordering it on the southwest. The two streets were heavily traveled; and the other corners and nearby property were improved with buildings devoted to commercial uses such as a drive-in restaurant, a storage and equipment lot, a real estate office, a meat packing business, a post office substation and an automobile service station. To the south and southwest, single-family residences were located. The Palos Park Zoning Ordinance classified Lots 27 and 28 in its R-1 One-Family Dwelling District and permitted use of the land only for detached single-family structures on lots of not less than one acre. Although Lots 27, 28 and 50 had been for sale throughout the 23 years following their platting, no one offered to purchase them for single-family use. In fact, the few offers which O'Connor did receive were all contingent on their being zoned for business use. None was ever made that did not have this condition as a part of the offer terms.

On June 4, 1971, O'Connor entered into a real estate contract that was subject to just this condition. It was with Frank J. McNamara who agreed to pay $70,000 for the three lots, contingent on acquisition by the purchaser, at his expense, of a zoning change which would put the lots

in a business classification described in the Palos Park Zoning Ordinance. A rider to the contract provided that if the land could not be so rezoned within a certain period, either party could cancel the agreement by a notice in writing mailed to the other. Soon after entering into this contract, McNamara and his wife gave Marathan Oil Company an option to purchase Lots 27 and 28 for $65,000, subject to the condition that the McNamaras obtain a zoning change which would permit use of the lots for storage, handling, distribution and sale of petroleum products, and the maintenance of an automobile service station. Marathon Oil later exercised its option, again subject to the condition concerning the zoning change.

Acting on his contract with O'Connor, McNamara applied to Palos Park authorities for a zoning change of Lots 27 and 28 which would permit the use and operation of an automobile service station. McNamara did not tell village officials that he was acting for O'Connor. But a hearing was had at which there was admitted in evidence the contract with O'Connor and the option to Marathon Oil. After hearing the application, the Palos Park Zoning Board of Appeals unanimously denied it. Three months later, O'Connor and the McNamaras filed the complaint in this suit for declaratory judgment against the Village of Palos Park, alleging that the R-1 One-Family Dwelling District of the Village zoning ordinance as applied to Lots 27 and 28 was a discriminatory, unwarranted, unreasonable and capricious exercise of power by the municipality, without any relation to the public health, safety and welfare; and that as applied to the subject real estate, the ordinance confiscated plaintiffs' land and was violative of State and Federal constitutional provisions which guaranteed them equal protection of the laws and due process of law. They prayed for a declaration that they, and all persons claiming through them, had a clear legal right to erect an automobile service station on the two lots.

Defendant did not answer the complaint. Instead, it moved to dismiss. The asserted ground was that from the allegations, it appeared O'Connor was owner of the lots and McNamara was contractor purchaser; that O'Connor did not apply for any zoning change affecting the lots in question while the McNamaras, because their claim was based on the contract to purchase from O'Connor, did not have the standing to sue for a declaratory judgment; therefore, neither O'Connor nor the McNamaras could file the suit in this case.

The plaintiffs responded to the motion, alleging that they (O'Connor the owner of the property, McNamara the contract purchaser) had exhausted all available local remedies. Thus, they had the right to institute this proceeding for a declaratory judgment. The motion was heard and

the trial court entered an order dismissing the McNamaras from the suit. As to the balance of the motion, the court set it for hearing on the contested allegations of O'Connor and the defendant municipality.

When the motion was called, Frank McNamara appeared to testify concerning his contract with O'Connor, his application for the zoning change and his appearance in the public hearing before the Palos Park Zoning Board of Appeals. He told the trial court that he acted pursuant to the agreement, with O'Connor's knowledge; and throughout, he kept the latter informed of the progress in the zoning change proceedings. After McNamara's testimony, the attorney for the village moved for a finding that no application for a zoning change was filed by or on behalf of O'Connor. A colloquy followed between the court and counsel during which the trial judge asked the village attorney whether, under the Palos Park Zoning Ordinance, someone else acting on behalf of a property owner, with his permission, could make an application for a zoning change and thus exhaust the available administrative and local remedies. The attorney said that, in his opinion, this could be done. However, the lawyer argued that in this case, there was no evidence that O'Connor authorized anyone to act on his behalf and make an application for the zoning change. After considering the arguments, the trial court denied the motion for a direct finding.

Defendant then called as its witness Joseph J. Kaptur, chairman of its zoning board of appeals. He testified that at no time in the proceedings involving McNamara's application for the zoning change was there any mention that O'Connor was being represented there. When he was cross-examined, Kaptur said that McNamara had described himself as a contract purchaser of the subject real estate from O'Connor. A copy of the contract, according to Kaptur, was made part of the record. His testimony concluded presentation of the evidence; and after hearing the parties, the trial court made "* * * a factual determination that McNamara made the application with knowledge and consent and the ratification of his actions by John C. O'Connor, and that application was just as though O'Connor made it." The motion to dismiss O'Connor's suit was denied; thereafter, defendant answered the complaint; and a few months later, there was a trial of the issues formed by O'Connor's complaint and the answer of the defendant, Village of Palos Park.

O'Connor testified and called five witnesses who knew about Lots 27 and 28 or had become acquainted with them. They were a lawyer who on occasion was a land developer, a real estate representative of Marathon Oil Company, a construction engineer, a consultant in real estate appraising and a consultant in city planning and zoning. In addition, he offered and the court admitted into evidence 20 exhibits, all touching on the lo-

cation of the lots, their physical attributes and their highest and best use. The exhibits complemented testimony offered in support of O'Connor's allegations that defendant's zoning ordinance, as applied to the two lots, was unreasonable, arbitrary, capricious and confiscatory.

After presenting evidence that consisted of testimony of 6 witnesses and 20 exhibits, plaintiff rested his case, and defendant made a motion for a finding in its favor. The motion was denied. Then, defendant called one witness. He was Joseph J. Kaptur, chairman of the Palos Park Board of Zoning Appeals, the same witness who had testified when the motion to dismiss was heard and decided. Questions asked of Kaptur made it clear that defendant was reasserting the claim concerning O'Connor's failure to apply for a zoning change, the subject of the earlier testimony. O'Connor's counsel objected, the trial court heard the parties and ruled that at the time defendant's motion to dismiss was decided, the ruling was on the merits; therefore, Kaptur's testimony, reiterating the same claim, was inadmissible. The Village attorney, however, was given an opportunity to make an offer of proof. This was done. As a result, Kaptur was questioned only to record the offer of proof, or concerning matters which did not contradict the testimony of any witness for the plaintiff or which did not adversely affect any exhibit the court had received in evidence. After Kaptur was dismissed, defendant rested its case. The parties argued their respective positions and the trial court ruled in favor of plaintiff.

In its judgment order, the trial court made findings of fact and then declared that the R-1 One-Family Dwelling District classification of the subject real estate by defendant's zoning ordinance was void; that plaintiff, his successors, assigns and those claiming by and through him, had the right to use the subject property for an automobile service station in accordance with the proposed plan of development. The order enjoined defendant, its officers, agents and employees from interfering with plaintiff, his respective successors and assigns, in their use of Lots 27 and 28, as declared by the court in its determination of the rights of the parties. Thus, the court rejected defendant's contention that O'Connor did not exhaust his local remedies and that the evidence did not prove he was entitled to a declaratory judgment.

It appears to have been defendant's contention early in this litigation that plaintiff did not exhaust his local remedies because he did not himself petition the village for a zoning change before joining in the declaratory judgment complaint. Consistent with this contention, in the trial court and before us, defendant has relied on *Bright v. City of Evanston*, 10 Ill.2d 178, 139 N.E.2d 270, where it was held that unless the validity of a zoning ordinance as a whole is attacked, an effort must be made by

the land owner to obtain relief at the local level before he seeks relief from the courts. *Reilly v. City of Chicago*, 24 Ill.2d 348, 181 N.E.2d 175.

Defendant's contention has been met by O'Connor with the argument that its procedure for zoning change applications was informal, one at which no record was kept. Therefore, there was no way McNamara could have disclosed that in applying for the zoning change, he, was in fact an agent for O'Connor, the landowner with whom he had contracted to purchase the lots in question. O'Connor has insisted that throughout those proceedings, McNamara's personal application for the zoning change complemented his contract to purchase the lots. In fact, O'Connor has consistently argued that the zoning change application made by McNamara was contemplated by the parties, was implicit in their agreement and was intended by them to have been the application of both. The bases for O'Connor's argument were the real estate contract, McNamara's testimony, the testimony of Kaptur and defendant's zoning ordinance which, in section 14.3—4.2, provided that "[a]n application for a variation of the regulations of this ordinance may be made by a property owner or his agent to the Board." From all this, the question which arose was whether the evidence, parol and circumstantial, proved that McNamara was O'Connor's agent when he applied for the zoning change. The trial court found that McNamara was O'Connor's agent. In our judgment, this ruling was correct.

■■ Where an agent fails to disclose that he is acting for a principal, the latter may, on showing the agency, claim the benefit of any transaction into which the agent entered, precisely as if the principal had entered into it himself. (See *Heywood Brothers & Wakefield Co. v. Andrews*, 89 Ill.App. 195.) Even where an agent enters into a written contract, it is competent for his principal to show by parol evidence that the agent was acting for him. (*Barker v. Garvey*, 83 Ill. 184.) And for the purpose of proving these essential facts, an alleged agent may be called as a witness in order to establish existence of the agency. *Fredrich v. Wolf*, 383 Ill. 638, 50 N.E.2d 755.

■■ As a rule of evidence, it has been said that the nature and extent of an agency may be shown by parol evidence, direct or circumstantial. Thus, reference may be had to the situation of parties and properties, acts of parties, and other circumstances germane to the question. Therefore, if evidence shows one person acting for another under circumstances that imply knowledge on the part of that other, the supposed principal, a prima facie case of agency is established. (*City of Evanston v. Piotrowicz*, 20 Ill.2d 512, 170 N.E.2d 569.) In this case, the real estate contract, defendant's ordinance permitting an application for a zoning change to be made by an agent and McNamara's testimony that he had acted for

O'Connor, made a prima facie case of agency, one that defendant did not rebut. Therefore, we conclude that O'Connor, before filing this suit for declaratory judgment, exhausted his local and administrative remedies when McNamara, with whom he had contracted to sell the land, applied for the zoning change.

■■ This zoning change concerned a triangular shaped parcel of land that forms one of the corners of a six-corner intersection in defendant's village. As zoned, it could be developed only for single-family homes; and subject to the zoning restrictions, the parcel had a maximum valuation of $7,500. O'Connor's contract with McNamara had determined that this parcel, plus Lot 50, had a value of $70,000. Thus, if the zoning change is sustained, O'Connor will sell the parcel and receive for it the aliquot portion of $70,000; if it is not, the parcel, in all probability, will continue to be a permanently vacant piece of property. Zoned for residential use only, but closely located to other properties commercially zoned, the parcel is rendered peculiarly unattractive and of little value for residential purposes. None of plaintiff's evidence touching on the loss he had suffered and will continue to suffer from defendant's zoning classification of his property was contradicted. Therefore, we are of the opinion that O'Connor's evidence proved he had and would continue to sustain injury because of application to his property of the zoning classification about which he complained. (See *Krom v. City of Elmhurst*, 8 Ill.2d 104, 133 N.E.2d 1; compare *Mutual National Bank v. City of Chicago*, 26 Ill.2d 342, 186 N.E.2d 341; *Moist v. County of Du Page*, 10 Ill. App.3d 473, 294 N.E.2d 316.) The remaining issue is whether the evidence also overcame the presumption that as applied to plaintiff's property, defendant's zoning ordinance was valid.

Relevant to this issue, and bearing on its resolution, was a land use map of the property surrounding Lots 27 and 28. This map was used by plaintiff's expert on city planning and zoning who testified, without contradiction, that the two lots, and Lot 50, were not zoned in conformity with surrounding uses. The expert gave detailed testimony which established that the land uses near the subject real estate were not uniform. For example, at and near the six-corner intersection of which the two lots formed a part, the uses were commercial in character. The lots, however, were restricted by defendant's zoning to single-family use. Therefore, plaintiff's evidence proved, without question, that the two lots were not zoned in conformity with surrounding uses and that the established uses of land in the area were not uniform. It is well established in the law of zoning that in determining the validity of a zoning restriction courts always consider of paramount importance the question whether the subject property is zoned in conformity with surrounding uses and

whether those uses are uniform and established. *Jacobson v. City of Evanston*, 10 Ill.2d 61, 69-70, 139 N.E.2d 205; *Wehrmeister v. County of Du Page*, 10 Ill.2d 604, 141 N.E.2d 26; compare *River Forest State Bank & Trust Co. v. Village of Maywood*, 23 Ill.2d 560, 179 N.E.2d 671.

A construction engineer testified for the plaintiff and told the court that construction of an automobile service station on Lots 27 and 28 would not increase vehicular traffic in the area because the station would serve persons who presently use the well-traveled streets that border the parcel. Plaintiff's expert in city planning and zoning testified, again without contradiction, that defendant's R-1 zoning classification of plaintiff's property did not promote public health, safety, morals and welfare. It is well settled that a zoning restriction must find its justification in public health, safety, morals and welfare. (*Regner v. County of McHenry*, 9 Ill.2d 577, 138 N.E.2d 545; *Kovack v. Village of La Grange Park*, 18 Ill.2d 233, 163 N.E.2d 451.) Although a municipality has power to restrict the use and purposes to which private property may be devoted, that power is not unfettered; and where the restriction bears no real and substantial relationship to public health, safety, morals and general welfare, it must be set aside as an undue restriction upon the ownership of private property. *Tillitson v. City of Urbana*, 29 Ill.2d 22, 193 N.E.2d 1.

■■ Moreover, in cases of this kind, the relative gain to the public compared with the hardship imposed on the owner of private property is important. (*La Salle National Bank v. County of Cook*, 12 Ill.2d 40, 145 N.E.2d 65.) The uncontradicted testimony by plaintiff's witnesses showed that use of the two lots as an automobile service station would not depreciate the value of property nearby. Thus, it appears that the public had nothing to gain from retention of defendant's zoning classification of plaintiff's land while plaintiff had much to lose. In such a case, it is generally said that where the public interest is nonexistent or insignificant, but the opposing private interest will suffer great injury, a court will consider a zoning restriction to be unreasonable and violative of due process and equal protection guarantees. *Chicago Title & Trust Co. v. Village of Wilmette*, 27 Ill.2d 116, 188 N.E.2d 33.

■■ Plaintiff's evidence also established, again without contradiction, that the two lots were not suitable for the uses to which they were restricted by defendant's zoning ordinance. In fact, construction of single-family residences as permitted by the ordinance would result in nonconforming uses because of area size requirements. However, they were ideally suited for the commercial use to which plaintiff proposed they be put. The two lots, together with Lot 50, had been vacant for 23 years, without anyone offering to develop them for single-family use. The suitability of real estate for the use to which it is restricted by zoning and

the length of time a parcel of real estate has been vacant as zoned, considered in the context of land development in the area, are among the facts which a court may take into consideration in determining the validity of a zoning restriction. (*Langguth v. Village of Mount Prospect,* 5 Ill.2d 49, 124 N.E.2d 879; *Petropoulos v. City of Chicago,* 5 Ill.2d 270, 125 N.E.2d 522.) Applying this rule, it appears to us that the evidence heard by the trial court unquestionably established, without contradiction, the unsuitability of the subject property to the zoned use, and proved the long period of time they had remained vacant as zoned. This being so, *Zenith Radio Corp. v. Village of Mount Prospect,* 15 Ill.App.3d 587, 304 N.E.2d 754, a decision of this court on which defendant relies, is not in point because there the defendant municipality introduced evidence that controverted plaintiff's attempt to show that the zoning ordinance in question was void. The trial court ruled in favor of the defendant municipality; this court upheld the ruling, concluding that the judgment of the trial court was not against the manifest weight of the evidence. (15 Ill.App.3d 587, 598.) Therefore, we conclude that in this case the evidence on which the trial court ruled in favor of O'Connor overcame the presumption that defendant's zoning classification of plaintiff's land was valid. (*Wiercioch v. Village of Niles,* 27 Ill.2d 363, 189 N.E.2d 278; *Van Laten v. City of Chicago,* 28 Ill.2d 157, 190 N.E.2d 717.) For these reasons, we affirm the declaratory judgment in favor of the plaintiff.

Affirmed.

STAMOS and HAYES, JJ., concur.