DONALD J. TOMASO *et al.*, Plaintiff-Appellee and Cross-Appellant, v. PLUM GROVE BANK, Defendant-Appellant and Cross-Appellee.

First District (4th Division)   No. 83—2752

Opinion filed January 10, 1985.

Holmstrom & Green, P.C., of Woodstock (James A. Campion, of counsel), for appellant.

Michael J. Smith and J. Scott Troeger, both of Tenney & Bentley, of Chicago, for appellee.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, Donald Tomaso, brought suit in the circuit court of Cook County claiming that the defendant Plum Grove Bank (the bank) wrongfully withheld two cashier's checks, one in the amount of $130,000 and the other in the amount of $50,000, belonging to plaintiff. Following a bench trial, the court awarded plaintiff judgment in the amount of $180,000 but denied his claim for prejudgment interest. This appeal and cross-appeal followed.

On appeal, the bank maintains (1) that the entry of judgment by the trial court is against the manifest weight of the evidence; (2) that the trial court was without jurisdiction to decide this dispute because certain necessary and indispensable parties were not included as parties defendant; and (3) that the trial court erred in refusing to admit

evidence of setoffs against plaintiff's claims. On cross-appeal, plaintiff claims that the trial court erred in denying prejudgment interest on the judgment award.

We affirm in part, reverse in part and remand.

BACKGROUND

The circumstances which led to this litigation concerned the purchase by plaintiff of a 50% interest in a Colorado gold mine known as L. & M. Oro II. Plaintiff testified that he learned of the possibility of purchasing the gold mine interest in October of 1978 through his friend, Sheldon Moss. There were several telephone calls and meetings that month between plaintiff, Moss, and plaintiff's brother, David Tomaso, who was president of the Plum Grove Bank at that time. Plaintiff told David about the gold mine deal and stated that five letters of credit totalling $355,000 would be needed to effectuate the purchase. Plaintiff also told David that for bringing the deal to him and for acting as his agent, Moss would receive 10% of whatever interest plaintiff acquired in the venture. David told plaintiff that the bank could issue the necessary letters of credit, but that the bank would require collateral.

Early in November of 1978, plaintiff wire-transferred $355,000 from an account at the American National Bank to the account of Northeast Illinois Financial Corporation (NIFC) at the Plum Grove Bank to use as collateral in connection with the bank's issuance of the letters of credit. NIFC was a corporation owned by plaintiff, and plaintiff was a signatory on the NIFC account at the bank. Moss had no interest in the NIFC account.

After being informed of the wire transfer, David told plaintiff that written authorization was needed for the bank to withdraw the money from the NIFC account to use as collateral for the letters of credit. David prepared the written authorization, and plaintiff signed it on November 3, 1978. The authorization stated that the $355,000 was to be issued to Moss in five cashier's checks and these checks were to be used as collateral for each letter of credit that was issued. The five cashier's checks were issued with Moss as payee, showing NIFC as the remitter. Moss endorsed the five checks in blank and signed the applications for each letter of credit.

The applications for the letters of credit were obtained by David from the Mount Prospect State Bank, Plum Grove Bank's correspondent. David later testified that he followed his corresponding bank's instructions in filling out the applications and in issuing the letters of credit. Among the terms on the blank application forms was a provi-

sion which pledged all the property of the applicant held by the bank, both as security for the letters of credit and for any other liabilities of the applicant to the bank. At the time the letters of credit were issued, Moss had outstanding certain loan accounts at the bank.

Five letters of credit were issued for various amounts to four individuals and to L. & M. Oro II, Inc. The letters of credit showed Moss as the account party. Each letter of credit had an expiration date of March 15, 1979. Nowhere on the letters of credit, the letter of credit applications, or on the cashier's checks did plaintiff's name appear. However, both plaintiff and David testified that David was aware from the beginning that Moss was acting as plaintiff's agent, that the cashier's checks were to be used for the sole purpose of securing the letters of credit, and that the cashier's checks belonged to plaintiff and were to be returned to him if the letters of credit were not presented to the bank before their expiration date.

David also testified that he had told others at the bank about the nature of the transaction. He could not, however, recall whom he told or when he told them. David also recalled mentioning, in written reports to the bank's directors, the fact of plaintiff's involvement in the transaction. At trial, these reports were not offered as evidence by either plaintiff or the bank. David was certain that he told Richard Erler, an officer of the bank, about plaintiff's interest and financial involvement in the transaction. Erler, however, testified that he was aware only of the fact that the bank was holding $355,000 in cashier's checks made out to Sheldon Moss.

Sometime early in 1979, the gold mine deal began to fall apart. Plaintiff asserted that, after learning of the gold mine deal from Moss, he negotiated the purchase arrangements with Larry Moore, a principal in the corporation which owned the gold mine. In return for the $355,000, Moore was to transfer to plaintiff stock certificates in the gold mine corporation. However, in January of 1979, plaintiff had not received the stock. In an effort to halt the transaction, plaintiff contacted David at the bank and asked him to stop payment on the letters of credit. David told plaintiff that the letters of credit were irrevocable and if properly presented, the bank would have to pay out. David further told plaintiff that if the letters were not presented by their expiration date, the bank would need something in writing from plaintiff in order to return the cashier's checks to him.

Shortly thereafter, David left his employment at the bank for unexplained reasons. Plaintiff contacted his attorney, Richard Cochran, to protect his interests at the bank after his brother's departure. Cochran testified that he contacted Milton Perlman, the acting presi-

dent of the bank, concerning plaintiff's predicament. Perlman told Cochran that the bank had nothing on file indicating that plaintiff had any interest in the cashier's checks securing the letters of credit. Perlman requested that Cochran send the bank an assignment of all of Moss' interest in the cashier's checks so that the bank would have a clear record of plaintiff's ownership. After Cochran explained to Moss why the assignment was necessary, Moss assigned all his interest in the cashier's checks to plaintiff. The written assignment was then sent to Perlman.

Three of the five letters of credit were properly presented to the bank and were paid. A fourth letter of credit was never presented. However, the $50,000 cashier's check securing that particular letter of credit was not returned to plaintiff; rather, the bank cashed it to apply against Moss' other obligations at the bank.

The fifth letter of credit was presented to the bank, but was denied payment because the bank claimed the tender was improper in form, not having the required documentation. The $130,000 cashier's check securing the fifth letter of credit was cashed by the bank sometime in early 1981 and was applied to Moss' other obligations to the bank.

The evidence presented at trial also showed that two other lawsuits resulted from the transaction here at issue. Plaintiff brought suit in Colorado against Larry Moore and L. & M. Oro II, Inc., based on the failed transaction. This litigation was eventually settled. Additionally, the holder of the letter of credit on which the bank had denied payment instituted litigation against the bank in Colorado to enforce payment of the letter of credit. This suit was later dismissed by the Colorado courts based on lack of jurisdiction over the bank. There was also evidence that Sheldon Moss independently invested in the gold mine transaction.

Plaintiff's action against the bank, filed in the circuit court of Cook County, sought the return of the two cashier's checks which had been applied to Moss' other personal obligations to the bank. As noted, following a bench trial, the trial court awarded plaintiff $180,000, representing the issue amount of the two cashier's checks, and denied plaintiff's claim for prejudgment interest. This appeal and cross-appeal followed.

OPINION

I

The bank's initial argument concerns the sufficiency of the evi-

dence underlying the trial court's judgment.

## A

■ The bank first contests the trial court's findings that Moss was acting as plaintiff's agent in the gold mine transaction, that the bank had knowledge of this agency relationship through David Tomaso, its then president, and that plaintiff was entitled to the return of the cashier's checks securing the two expired letters of credit. The bank argues that these findings were contrary to the manifest weight of the evidence adduced at trial.

It is well established that because of the trial court's superior position to assess the credibility of the witnesses and to weigh the evidence, its findings will be disturbed only if clearly contrary to the manifest weight of the evidence, and not merely because a reviewing court might reach a different conclusion. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356, 226 N.E.2d 624; *Chicago Title & Trust Co. v. First Arlington National Bank* (1983), 118 Ill. App. 3d 401, 454 N.E.2d 723.) Furthermore, the findings and judgment of the trial court may not be overturned if there is any evidence in the record to support them. *Jaffe Commercial Finance Co. v. Harris* (1983), 119 Ill. App. 3d 136, 142, 456 N.E.2d 224.

In determining the sufficiency of the evidence supporting the trial court's findings of agency, the application of several principles is important. The existence of an agency relationship may be established, and its nature and extent shown, by circumstantial evidence, and reference may be made to the situation of the parties, their acts and other relevant circumstances. (*St. Ann's Home for the Aged v. Daniels* (1981), 95 Ill. App. 3d 576, 579, 420 N.E.2d 478.) Moreover, the agency relationship does not depend on an express appointment or acceptance by the principal and agent. (95 Ill. App. 3d 576, 579.) Finally, the existence of the agency relationship is a question of fact to be decided by the trial court. *Swartzberg v. Dresner* (1982), 107 Ill. App. 3d 318, 325, 437 N.E.2d 860.

The bank maintains that, considering all of the relevant circumstances, plaintiff's and David Tomaso's testimony concerning Moss' agency in arranging for the letters of credit is insufficient. The bank points to the lack of documentation of the agency relationship, Moss' subsequent assignment of his interest in the cashier's checks to plaintiff, and certain allegations in plaintiff's Colorado lawsuit against Larry Moore and others alleging that plaintiff's interests in the gold mine were by assignment without mention of Moss' agency. Further, the bank contends that Moss had an independent investment in the

gold mine venture and that fact negated testimony to the effect that Moss was acting as plaintiff's agent.

However, even putting aside for the moment the trial court's province to assess the credibility of the witnesses and the weight of the evidence, we cannot conclude that these facts so manifestly negate plaintiff's and David Tomaso's testimony that the trial court's findings should be disturbed. Moss's assignment was obtained by plaintiff at the bank's request in an effort to protect plaintiff's interest in the cashier's checks, which interest the bank had called into question. Moreover, our review of the pleadings in the Colorado lawsuit, admitted into evidence here, convinces us that the allegations there were, at best, ambiguous about the nature of plaintiff's interest in the money securing the letters of credit. Furthermore, we fail to see the relevance of Moss' independent investment in the gold mine venture to his status as plaintiff's agent in arranging for the letters of credit. Finally, the mere fact that the letter of credit documents do not disclose the agency relationship does not, by itself, either support or exclude a finding of agency. (*Cf. O'Connor v. Village of Palos Park* (1975), 31 Ill. App. 3d 528, 333 N.E.2d 276.) In any event, a judgment will not be found to be against the manifest weight of the evidence merely because there may be sufficient evidence to support a contrary judgment. *Chicago Title & Trust Co. v. First Arlington National Bank* (1983), 118 Ill. App. 3d 401, 410.

We briefly note the bank's additional contention that in order to prevail, plaintiff was required to offer evidence as to why the agency relationship was not disclosed in the letter of credit documents. The bank, relying on *Bright v. Max E. Miller & Son, Inc.* (1971), 2 Ill. App. 3d 1051, 279 N.E.2d 98, claims that the circumstances of this case require such proof. We disagree.

In *Bright*, the plaintiffs offered no direct proof of the alleged agency relationship, and the president of the defendant testified that he dealt with the alleged agent believing him to be the principal. The alleged agent had also signed a document affirmatively stating that he was acting as a principal in the transaction in question. In the instant case, however, the plaintiff testified that Moss was his agent and that he, rather than Moss, supplied the money to secure the letters of credit. David Tomaso testified that, in his capacity as president of the bank, he was aware of Moss' status as plaintiff's agent. Moreover, the documents here are merely silent as to the existence of the agency relationship. Finally, there was direct documentary proof that the funds used for the cashier's checks were taken from plaintiff's account at the bank. As opposed to the almost total lack of evidence of agency in

*Bright,* here there is sufficient testimonial and documentary proof to sustain the trial court's findings and judgment.

The bank's argument, taken as a whole, essentially urges us to reassess the credibility of the witnesses and the weight given to the evidence. However, giving proper deference to the trial court's province in these matters, we conclude that the trial court's findings must be allowed to stand.

## B

The bank also contests the trial court's award of $180,000 to plaintiff as being against the manifest weight of the evidence. The bank claims that, if anything, the evidence only supported an award of $50,000 to plaintiff, rather than $180,000, because the bank is still entitled to hold $130,000 as security on the letter of credit it refused to honor. There was some evidence at trial that Glen Leney, the holder of the dishonored letter of credit, brought suit against the bank in Colorado, claiming that the dishonor was wrongful. As previously noted, the litigation was later dismissed by the Colorado courts for lack of jurisdiction over the bank. Similar facts were alleged in the bank's answer to the complaint here, but not by way of affirmative defense. The bank claims that Leney may still sue the bank in Illinois, as the applicable statute of limitations would keep his claim alive in this jurisdiction for 10 years. (See Ill. Rev. Stat. 1983, ch. 110, par. 13—206.) Thus, the bank claims that it is entitled to continue holding the $130,000 as security to protect itself against possible liability to Leney on the letter of credit since the effect of the statute is to extend the letter of credit's life until the limitation period runs. In reply, the plaintiff maintains that the bank is precluded from raising this argument on appeal because it failed to raise the issue below. We agree.

It is the general rule that the theory upon which a case is tried cannot be changed on review, and that an issue not presented to or considered by the trial court cannot be raised for the first time in the reviewing court. (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147, 324 N.E.2d 417.) The only exception to this rule allows an appellee to defend a judgment on appeal by raising an issue not considered by the trial court if the necessary factual basis for determination of the point is contained in the record. (*Shaw v. Lorenz* (1969), 42 Ill. 2d 246, 248, 246 N.E.2d 285.) Otherwise, the points argued on appeal are required to be commensurate with the issues presented at trial. *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147.

Our review of the record clearly indicates that the sole theory of the bank's defense was that Moss was not plaintiff's agent, but rather

that Moss owned the cashier's checks, thus giving the bank the right to apply the $180,000 to Moss' other liabilities to the bank under the terms of the letter of credit applications. The references in the record to the Leney litigation were merely offered as foundation for another claim by the bank to setoffs for expenses incurred by the bank in that litigation. Moreover, if the bank's defense was to include an alternative claim to continued security on the Leney letter of credit, it could have been made quite explicit in the pleadings. It was not. Furthermore, the claim to continued security was never argued to the trial court. Under these circumstances, we must conclude that the bank is precluded from raising this argument on appeal. *Cf. Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 148.

## II

■ We next address the bank's claim that that trial court was without jurisdiction to decide this dispute in the absence of certain necessary and indispensable parties, namely, Sheldon Moss and Glenn Leney, the holder of the letter of credit which the bank refused to honor. Plaintiff argues that the bank waived any claim based on this contention and also that, even if there was no waiver, neither Moss nor Leney is a necessary party.

A necessary party is one whose participation in the litigation is required for any of three reasons: (1) to protect an interest which the absent party has in the subject matter of the controversy which would be materially affected by a judgment entered in his absence (Ill. Rev. Stat. 1983, ch. 110, par. 2—406(a); *Lerner v. Zipperman* (1979), 69 Ill. App. 3d 620, 387 N.E.2d 946); (2) to reach a decision which will protect the interests of those before the court (69 Ill. App. 3d 620, 623); or (3) to enable the court to make a complete determination of the controversy. (Ill. Rev. Stat. 1983, ch. 110, par. 2—406(a).) The bank maintains that these standards are satisfied, thus rendering the trial court's judgment in Moss' and Leney's absence null and void.

It is undisputed, however, that the bank did not raise these contentions below. Thus, we must first consider the effect of the bank's failure to object to the nonjoinder of Moss or Leney on the present appeal.

Section 2—407 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—407) provides in part:

> "New parties may be added *** by order of the court, at any stage of the cause, before or after judgment, as the ends of justice require and on terms the court may fix."

This section has been construed as applying only to necessary parties

(*Keehner v. A.E. Staley Manufacturing Co.* (1977), 50 Ill. App. 3d 258, 267, 365 N.E.2d 275) and vests broad discretion in the trial court to add new parties. (*Lerner v. Zipperman* (1979), 69 Ill. App. 3d 620, 625.) However, objections to nonjoinder of necessary parties after judgment are disfavored (*Theodorou v. Community Builders, Inc.* (1972), 6 Ill. App. 3d 277, 280, 285 N.E.2d 474), and distinctions are drawn as to when such objections will be considered if raised after judgment has been entered. Fundamental principles of due process require that all persons who have a direct interest in the subject matter of the dispute which will be affected by the judgment be joined in the litigation, and any judgment entered without jurisdiction over such persons is null and void. (*Moore v. McDaniel* (1977), 48 Ill. App. 3d 152, 156, 362 N.E.2d 382.) Moreover, as the joinder of such indispensable parties is a jurisdictional issue, it may be raised by the parties on appeal or by the appellate court *sua sponte.* (*National Bank v. S.N.H., Inc.* (1975), 32 Ill. App. 3d 110, 121, 336 N.E.2d 115.) However, where a party may be considered necessary for reasons other than a direct interest in the subject matter of the dispute, objections to their nonjoinder will not be considered after a judgment has been entered. *Lerner v. Zipperman* (1979), 69 Ill. App. 3d 620, 626; *Zieler v. Village of Oak Lawn* (1974), 23 Ill. App. 3d 752, 756, 320 N.E.2d 86.

■ In the instant case, a great part of the bank's argument that Moss is a necessary party hinges on the possibility of the bank's being exposed to further litigation and liability on the cashier's checks. Similarly, the bank's whole argument that Leney is a necessary party is bottomed on the claim of detriment to the bank from possible litigation instituted by Leney on the dishonored letter of credit. While the possibility of multiple litigation might constitute the basis for requiring the joinder of an absent party, it in no way deprives Moss or Leney of any rights in the present litigation. We must therefore conclude that the bank's objections to the nonjoinder of Moss and Leney, based on these grounds, come too late and must be rejected. *Theodorou v. Community Builders, Inc.* (1972), 6 Ill. App. 3d 277, 280.

■ This conclusion, however, does not dispose of the bank's argument that Moss' direct interests in the cashier's checks or the $180,000 credit to his loan accounts at the bank from the funds represented by those checks were prejudiced by the trial court's judgment in Moss' absence. The plaintiff claims that Moss disavowed any interest in the cashier's checks or the funds when he executed the assignment to plaintiff at the bank's request. In reply, the bank contends that since plaintiff abandoned his reliance on the assignment as a the-

ory of recovery in favor of his agency claim, he should not now be allowed to rely on the assignment as dispositive of Moss' indispensability to this litigation.

We find the bank's claim unpersuasive. The testimony was clear and unrefuted that the bank requested that Moss execute the assignment as evidence of plaintiff's ownership of the cashier's checks. The testimony also showed that Moss did so after it was explained that the bank was claiming that the checks were his rather than plaintiff's. Under these circumstances, plaintiff's reliance on the assignment as an affirmative indication by Moss that he has no direct interest in the subject matter of this dispute is in no way contrary to plaintiff's claim that Moss was acting as his agent in the letter of credit transaction. Moreover, we find that Moss' assignment serves as a clear disavowal of any direct interest he may have had in the cashier's checks or in the application of the funds represented by those checks to his loan accounts at the bank. (*Cf. Lerner v. Zipperman* (1982), 104 Ill. App. 3d 1098, 1100-01, 433 N.E.2d 1072.) We therefore conclude that Moss was not an indispensable party to this litigation.

### III

■ The bank's final contention is that the trial court erred in refusing to admit testimony concerning litigation expenses the bank incurred in defending the lawsuit brought by Leney to enforce his letter of credit. The bank maintains that under the terms of the letter of credit applications, such expenses were setoffs against any claim by plaintiff to the funds securing the letters of credit. The trial court sustained plaintiff's objection to the testimony on the ground that the bank's claim to such setoffs was not put in issue by the bank's pleadings. The bank made no motion to amend its pleadings, but rather relied, as it does now, on its claim that the pleadings sufficiently raised the setoffs. We disagree.

It is well settled that the trial court is not required to admit evidence relating to issues not raised by the pleadings. (*Orchard Brook Home Association, Inc. v. Joseph Keim Land Development Corp.* (1978), 66 Ill. App. 3d 227, 234, 382 N.E.2d 818.) Moreover, a defense not properly pleaded is deemed waived. (*M. Loeb Corp. v. Brychek* (1981), 98 Ill. App. 3d 1122, 1125, 424 N.E.2d 1193.) Our review of the pleadings clearly reveals that the bank's affirmative defense only raised its right under the terms of the letter of credit applications to offset Moss' other loan obligations to the bank with the cashier's checks. There is absolutely no claim of a right to offset the litigation expenses, nor are there any averments that the bank incurred such

expenses. Thus, we necessarily conclude that the trial court's exclusion of the testimony in question was entirely proper, and any claim to the setoffs waived.

## IV

■ We now turn to the plaintiff's cross-appeal contesting the trial court's denial of prejudgment interest under the interest statute. (Ill. Rev. Stat. 1983, ch. 17, par. 6402.) While the trial court's denial of prejudgment interest will not be disturbed unless contrary to the manifest weight of the evidence (*Pietka v. Chelco Corp.* (1982), 107 Ill. App. 3d 544, 558, 437 N.E.2d 872), our review of the record, the statute, and the case law convinces us that prejudgment interest should have been awarded in the instant case.

Plaintiff's argument relies on the "instrument of writing" provision of the interest statute which provides as follows:

> "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; ***." (Ill. Rev. Stat. 1983, ch. 17, par. 6402.)

To recover prejudgment interest under this provision there must be a fixed and easily calculated amount due from a debtor-creditor relationship that has come into being by virtue of a written instrument. (*Martin v. Orvis Brothers & Co.* (1974), 25 Ill. App. 3d 238, 251, 323 N.E.2d 73.) If these requisites are satisfied, interest attaches to the amount due under the instrument of writing as a matter of law. (*Hamilton v. American Gage & Machine Corp.* (1976), 35 Ill. App. 3d 845, 852, 342 N.E.2d 758.) Moreover, the existence of a good faith dispute as to liability does not affect the operation of the statute under these circumstances. *First Arlington National Bank v. Stathis* (1983), 115 Ill. App. 3d 403, 416, 450 N.E.2d 833.

It has been previously held by this court that cashier's checks wrongfully withheld by a bank are instruments of writing creating an indebtedness (*In re Estate of Temple* (1970), 131 Ill. App. 2d 434, 266 N.E.2d 438 (abstract of opinion)), and the record in the instant case supports a similar finding. When the letters of credit expired on March 15, 1979, the bank became immediately indebted to plaintiff for the face amount of the cashier's checks drawn on plaintiff's account at the bank. The bank's refusal to return the checks prevented plaintiff from presenting the checks for the return of his funds. These funds, represented by the cashier's checks, were thus money due on a written instrument.

Additionally, we have no difficulty in finding that the amount due

is fixed and capable of exact calculation. We need only look to the face of the two cashier's checks to ascertain the amount owed plaintiff by the bank. Plaintiff's claim thus satisfies the requirements for an award of prejudgment interest under the "instrument of writing" clause of the interest statute. We therefore conclude that the trial court's denial of prejudgment interest must be reversed.

Our finding that plaintiff was entitled to prejudgment interest based on a sum due under an instrument of writing makes it unnecessary for us to consider his other arguments concerning this issue. Moreover, we also conclude that the bank's argument contesting the proper date from which to calculate prejudgment interest, based as it is on the bank's claim of possible exposure to further litigation on the Leney letter of credit, to be without merit.

The judgment of the trial court awarding plaintiff $180,000 is affirmed. The judgment denying an award of prejudgment interest is reversed and the cause remanded for computation and award of prejudgment interest from March 15, 1979, through the date of the judgment appealed from.

Affirmed in part, reversed in part, and remanded.

JOHNSON and JIGANTI, JJ., concur.