Budget Premium Company, an Illinois Corporation, Plaintiff-Appellant, v. Inter-Insurance Exchange of Lake States, an Illinois Insurance Corporation, et al., Defendant-Appellee.

### Gen. No. 64–23.

Third District.

February 10, 1965.

Sidney S. Deutsch, of Rock Island, for appellant.

Moran, Klockau, McCarthy, Shubert & Lousberg, of Rock Island, for appellee.

ABRAHAMSON, P. J.

This is a suit instituted by the plaintiff, Budget Premium Company, engaged in financing the payment of insurance premiums, to recover unearned premiums from the defendant, Inter-Insurance Exchange of Lake States, upon a cancellation of policies financed by Budget. For all practical purposes, the case was tried upon stipulations entered into by the parties, and after a finding for Lake States, Budget has appealed.

On August 31, 1961, Lake States addressed a letter to Budget, informing it that no assignment of Lake States' insureds' interest in premiums financed by Budget would affect Lake States until it received the premiums directly from Budget in the form of checks payable to Lake States.

Thereafter Budget financed the premiums of: Ira Teel on October 20, 1961; Tommie Lee Johnson on November 2, 1961; Paul Morales on October 20, 1961; Walter L. Macklin on November 6, 1961, and P. R. Hardin on September 14, 1961. Each policy of insurance was solicited by Larry Kaghan, an agent of Northern Illinois Insurance Agency, a brokerage firm authorized to issue policies on behalf of Lake States and other carriers.

Budget's contracts with the insured contained a promise to pay the installments due monthly, a confession of judgment clause, an assignment of any and all unearned premiums as security for the amount due, and, in the event of default authorized Budget to declare the entire amount due, cancel the policies and receive all of the unearned premiums. In the contract Larry Kaghan was indicated to be the agent, or broker, and he represented himself to be the authorized agent of Lake States.

278

Subsequently, Lake States was given a copy of each contract signed by these insureds, although it is not clear from either the abstract or the record whether this was done before or after the premium was paid.

Despite Lake States' letters of August 31, 1961, Budget thereafter paid the premiums in question to Kaghan and Northern, and Northern remitted the premium to Lake States after deducting its commissions. When the insureds failed to make their payments, Budget in lieu of sending cancellations to Lake States as provided in the insureds' contracts, sent notices of cancellation to Kaghan, who informed Northern, which in turn requested Lake States to cancel, but did not inform Lake States of the reason for the cancellation. Lake States complied with the request and returned the unearned net premiums to Northern, which remitted to Kaghan, who did not reimburse Budget, giving rise to this litigation.

At the outset we find it noteworthy to observe that no insured gave Budget the exclusive right to cancel the policy, but limited that right to the two causes: the insured's failure to pay any installment, and the assignment of the policy in violation of Budget's contract. Otherwise, the insured's right in that connection continued unimpaired.

Lakes States, of necessity, had some contractual relationship with Northern, the brokerage firm, which provided in some measure for the return of unearned net premiums whenever the carrier was requested to cancel a policy. When in conflict with Budget's contract, this subsisting agreement was unaffected by it and would be decisive. Lake States was not informed that the cancellations had been requested because of the insureds' failure to pay installments when due, and accordingly it was without actual or constructive notice that Budget would claim any interest in the return premiums.

There was no provision in Budget's contract requiring return premiums to be made directly to it instead of to the insurance agency, which, on the face of it, would permit Lake States to return such premiums in accordance with its contract with Northern.

■ This cause involves, fundamentally, a question of agency, and the pivotal issue is whether Kaghan was the agent of Budget or Lake States in the factual situation resulting in this litigation. The term broker is defined in the Illinois Insurance Code (Ill Rev Stats 1961, c 73, § 1065.37) as follows:

> "The term 'broker' means any person, partnership, association, or corporation who or which acts or aids in any manner in the solicitation or negotiation, for or on behalf of the assured, with or without compensation, of policies or contracts for insurance covering property or risks in this state. . . ."

This is the statutory pronouncement of the rule that an insurance broker usually represents the insurance buying public and is distinguished from an insurance agent in that the broker sustains no fixed or permanent employment by, or relation to, a carrier, but holds himself out for employment by the public generally. City of Chicago v. Barnett (1949), 404 Ill 136, 88 NE2d 477. The record is void of any evidence indicating that Kaghan or Northern acts in other than the capacity of a broker, and in the absence of causative circumstances, it follows that Kaghan and Northern were acting in behalf of the individual insureds, and in this case, of Budget, by reason of Budget's conduct prior to Kaghan's failure to return the unearned premiums to it.

We are aware of the provision of the Insurance Code (Ill Rev Stats 1961, c 73, § 1065.52), which provides in part that:

Any company which directly or through its agents delivers in this state to any insurance broker a policy or contract for insurance pursuant to the application or request of such broker, acting for an insured other than himself, shall be deemed to have authorized such broker to receive on its behalf payment of any premium which is due on such policy or contract for insurance . . . .

However, this particular statute neither expressly nor inferentially makes the broker the agent of the carrier to guarantee the delivery of any return premiums to the insured, or as in this case, the premium financing agency.

■ The original relationship of broker and assured which existed between Kaghan or Northern and the individual insureds, which is presumed to continue until altered by the conduct of the parties themselves, the failure of Budget to comply with Lake States' direction that it would not be affected by Budget's financing of insureds' premiums unless payments were made directly to Lake States, and Budget's conduct in the payment of the premiums and the service of notice of cancellation, compel us to the conclusion that Kaghan and Northern were the agents of Budget under the circumstances, and any loss attributable to Kaghan's failure to remit the return premiums to Budget must be assumed by Budget, rather than Lake States.

For the reasons stated the judgment of the Circuit Court of Rock Island County is affirmed.

Judgment affirmed.

CARROLL and MORAN, JJ., concur.