MATTHEWS ROOFING COMPANY, Plaintiff-Appellant, v. COMMUNITY BANK & TRUST COMPANY OF EDGEWATER, as Trustee, *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—89—0104

Opinion filed January 26, 1990.

William C. Butcher, of Chicago, for appellant.

Stephen E. Vargo, of Chicago, for appellee William Villaire.

No brief filed for other appellees.

JUSTICE RAKOWSKI delivered the opinion of the court:

This is an appeal from a dismissal pursuant to section 2—619(a)(5) of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(5)). The issues presented on appeal are: (1) whether Villaire, as beneficiary to a trust, had a sufficient interest in the land to send a demand for foreclosure pursuant to section 34 of the Mechanics' Liens Act (Act) (Ill. Rev. Stat. 1987, ch. 82, par. 34); (2) whether the decision of the trial court was in error when it dismissed count I of the plaintiff's complaint on the grounds that service of a demand letter by certified mail, return receipt requested, addressed to the plaintiff's at-

torney complies with the notice provisions of the Mechanics' Liens Act even if the return receipt is signed by someone other than the attorney; and (3) whether the decision of the trial court was against the manifest weight of the evidence when it found that the person who signed the return receipt for the mailed notice had implied authority to receive the attorney's mail. We affirm.

This appeal arises out of a two-count action in the mechanics' lien section of the circuit court of Cook County filed by Matthews Roofing Co. (Matthews) and naming as defendants the Community Bank & Trust Company of Edgewater, as trustee under trust No. 87—11—439, and all beneficiaries thereof; Citicorp Savings; and William Villaire. Count I was an action to foreclose on a mechanics' lien. Count II was in contract for money damages. The defendant William Villaire (Villaire) moved to dismiss count I pursuant to section 2—619(a)(5) (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(5)) based on Matthews' alleged failure to file suit within 30 days as provided for by section 34 (Ill. Rev. Stat. 1987, ch. 82, par. 34).

The Act provides:

"Upon written demand of the owner, lienor, or any person interested in the real estate, or their agent or attorney, served on the person claiming the lien, or his agent or attorney, requiring suit to be commenced to enforce the lien or answer to be filed in a pending suit, suit shall be commenced or answer filed within 30 days thereafter, or the lien shall be forfeited. Such service may be by registered or certified mail, return receipt requested, or by personal service." Ill. Rev. Stat. 1987, ch. 82, par. 34.

The court held an evidentiary hearing pursuant to section 2—619(c) (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(c)) and granted the motion to dismiss count I. The remaining contract count was transferred to the law division for trial. This court has jurisdiction pursuant to the trial court's express finding under Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)).

The undisputed facts are that on or about May 31, 1988, Matthews filed a claim for a mechanics' lien with the Cook County Recorder. This lien claimed money due from a contract for roof repairs which the defendant Villaire and Matthews had executed on April 1, 1988. Matthews filed the lien against the Community Bank & Trust Company of Edgewater, as trustee under trust No. 87—11—439; all beneficiaries of the trust; Citicorp Savings; and Villaire, who was referred to as the "owner" of the land in subsequent sections of the claim.

On June 21, 1988, in accordance with the Act, Villaire sent a letter demanding that Matthews file suit to enforce the lien within 30 days. This letter was addressed to the plaintiff's attorney, William C. Butcher (Butcher), and sent by certified mail with a return receipt requested. The letter was delivered at Butcher's address and signed for by William C. Bender (Bender) on June 23, 1988. Butcher himself did not receive the letter until June 27.

The first business day after the 30-day limit following the letter delivery to Bender was July 25, 1988. Matthews filed its complaint to foreclose on the lien and obtain alternative relief on July 26. Subsequently, Villaire filed a motion to dismiss count I on the grounds that the court did not have jurisdiction for a mechanics' lien because the complaint was not filed within the statutory limit.

At the evidentiary hearing, the following facts were adduced from Bender: Bender and Butcher shared a storefront office with a common address, a common mail slot, a large open office room, and a single front counter. Bender owned the building and had rented space to Butcher in the single office room for about five years. During that time, Bender had signed for Butcher's mail and other deliveries about once a year. Bender also routinely took the mail from the delivery person at the front counter and picked it up from the floor in front of the mail slot. Bender did this because the mail was always delivered in the morning and Butcher did not have office hours until the afternoon. Butcher did have a secretary who typed his outgoing mail; but she worked from her home, not the office, and did not handle incoming mail.

Bender also testified that he and Butcher did not have any business relationship other than that of landlord and tenant. Butcher had never expressly authorized Bender to receive his mail. On the other hand, Butcher had never issued any instructions to either Bender or the post office suggesting that Bender could not handle Butcher's regular mail and sign for certified deliveries.

I

Plaintiff first contends that Villaire did not have sufficient interest in the land to demand foreclosure action by a lien claimant. Plaintiff claims that Villaire, as trust beneficiary, has personal property rights in the trust, not rights to the real estate held in trust and subject to the lien. We disagree.

In this case, Matthews named Villaire as "owner" when it began the present action by recording the mechanics' lien. Further, Matthews' complaint listed Villaire as beneficiary under the defendant

trust and Villaire admitted this in his answer. So it was not until after Villaire moved to dismiss the foreclosure action that Matthews cited the terms of Villaire's trust and questioned Villaire's ownership. The trust defines Villaire's property rights as rights to personal property only. He has control of the property, including the power to "deal with the title," but he had no "right, title or interest" in the real estate. Hence, Matthews argues, Villaire does not have an interest in the real estate sufficient for a demand letter under section 34.

■■ ■ Illinois courts, however, have repeatedly and consistently held that the beneficiary of a land trust is an "owner" under the Act. (See, *e.g.*, *Dunlop v. McAtee* (1975), 31 Ill. App. 3d 56, 59, 333 N.E.2d 76, 78; *Hill Behan Lumber Co. v. American National Bank & Trust Co.* (1981), 101 Ill. App. 3d 268, 270, 427 N.E.2d 1325, 1327.) This holding needs no further comment. *Hill Behan Lumber*, 101 Ill. App. 3d at 270, 427 N.E.2d at 1327.

## II

Plaintiff contends as a second issue that the trial court was in error when it held that service of a demand letter by certified mail, return receipt requested, addressed to the plaintiff's attorney complies with the notice provisions of the Act even if the return receipt is signed by someone other than the attorney. Plaintiff argues that only the attorney addressee and not an agent of the attorney can receive mailed notices under the Act. We disagree.

Matthews contends that the legislature wrote section 34 with the case law on personal services in mind. His position is that even though the legislature allowed certified mail delivery, it intended the benefits of personal service. Thus, he argues, the legislature intended that the return receipt should bear the signature of the attorney being notified. We will review three points to consider Matthews' argument.

First, Matthews cites several cases to show the strict requirements of personal service. (*Wilson v. Lowmaster* (1899), 181 Ill. 170, 172, 54 N.E. 922, 922; *South Side Lumber Co. v. Date* (1910), 156 Ill. App. 430, 438-39; *Throgmorton v. Mosak* (1925), 245 Ill. App. 330, 332-33; *Capital Plumbing & Heating Supply Co. v. Snyder* (1971), 2 Ill. App. 3d 660, 665, 275 N.E.2d 663, 666.) All of these cases, however, are distinguishable from the situation here. All involve personal service, yet this case involves service by certified mail. In addition, all involve different statutory provisions which serve to protect a defendant for whom the notice might be the first warning of any legal problem. In section 34 liens, by contrast, the potential defendant is asking

for action from a party who has already claimed interest in a lien. The owner or lienor or other person interested in the real estate serves a demand notice on the lien claimant requiring action within 30 days. Ill. Rev. Stat. 1987, ch. 82, par. 34.

Second, section 34 does not specify "delivery limited to addressee only" even though such a limit does appear in section 24 on notice provisions for subcontractors' liens. (Ill. Rev. Stat. 1987, ch. 82, par. 24.) We may presume, since the legislature placed a limited-delivery provision in section 24, that it could have placed a similar provision in section 34 if such had been the legislative intent. Furthermore, section 34 does not require a return receipt signed by the addressee only even though the post office can provide return receipts with restricted delivery for certified and registered mail.

Third, Matthews also cites cases which show that the Act creates substantial rights in derogation of common law, it should be strictly construed, and its notice provisions effect a statute of limitations for the lien holder's claims. (*M.L. Ensminger Co. v. Chicago Title & Trust Co.* (1979), 74 Ill. App. 3d 677, 678, 393 N.E.2d 627, 628; *Lundy v. Boyle Industries, Inc.* (1977), 46 Ill. App. 3d 809, 811-12, 361 N.E.2d 321, 323, quoting *United Cork Cos. v. Volland* (1937), 365 Ill. 564, 572, 7 N.E.2d 301, 305; see also 53 Am. Jur. 2d *Mechanics' Liens* §354 (1970).) We agree.

■ However, Illinois courts have interpreted the strict requirements of notice by examining how effectively a party did in fact notify the other side rather than simply basing rights solely on whether every phrase of the statute was followed in exact detail. For example, in *Watson v. Auburn Iron Works, Inc.* (1974), 23 Ill. App. 3d 265, 273, 318 N.E.2d 508, 514, an Illinois court found adequate notice when a subcontractor mailed section 24 notices to two trusts held by the same bank for the same beneficiaries. One notice was properly placed in the trust file. Another was not addressed "delivery limited to addressee only" as required by section 24 and not placed in the trust file after receipt by the bank. Even so the court held that "the omission of the limited delivery language did not result in a lack of notification and should not be the basis for invalidating plaintiff's claim. This rule of strict construction is meant to apply only to requirements upon which the right to a lien depends." (*Watson*, 23 Ill. App. 3d at 272-73, 318 N.E.2d at 514.) *Watson* and the cases cited by Matthews have all favored the party who followed the statute in good faith and did, in fact, provide adequate notice for the other side.

■ In this case, Villaire mailed the notice to attorney Butcher as the statute requires. Butcher admits having the notice by June 27.

Thus, he had effective notice of the demand and its date well ahead of the 30-day filing deadline.

### III

The last issue is whether the trial court was in error when it ruled that Bender had implied authority to receive certified mail for Butcher. Butcher argues that because he never expressly told Bender to accept his mail agency cannot exist. We disagree.

■■■ The existence of an agency relationship is a question for the trier of fact. (*Swartzberg v. Dresner* (1982), 107 Ill. App. 3d 318, 325, 437 N.E.2d 860, 865.) The agent's authority can only come from his principal. (*Swartzberg*, 107 Ill. App. 3d at 325, 437 N.E.2d at 865.) The party alleging an agency relationship has the burden of proving it by a preponderance of the evidence. (*Swartzberg*, 107 Ill. App. 3d at 325, 437 N.E.2d at 865.) However, this relationship need not depend on an express appointment, but may be found in the situation of the parties, their actions, and other relevant circumstances. (*St. Ann's Home for the Aged v. Daniels* (1981), 95 Ill. App. 3d 576, 579, 420 N.E.2d 478, 481.) The Illinois Supreme Court has stated:

> "Agency may be established and its nature and extent shown by parol evidence, whether direct or circumstantial, and reference may be had to the situations of parties and property, acts of parties, and other circumstances germane to the question, and if the evidence shows one acting for another under circumstances implying knowledge on the part of the supposed principal of such acts, a *prima facie* case of agency is established." (Emphasis in original.) (*City of Evanston v. Piotrowicz* (1960), 20 Ill. 2d 512, 518, 170 N.E.2d 569, 573.)

Finally, a trial court's findings about agency should be disturbed only if they are clearly against the manifest weight of the evidence. *Tomaso v. Plum Grove Bank* (1985), 130 Ill. App. 3d 18, 23, 473 N.E.2d 588, 592.

■■ The undisputed facts in this case are that Bender signed a return receipt for Butcher's demand letter from the defendant. Both men agree that Butcher never expressly authorized Bender to receive this mail. On the other hand, Bender routinely handled Butcher's mail. The mail for both men was either slipped through the mail slot in the common front door or was placed on the common counter. This occurred in the morning when Bender was often present but Butcher never was. Consequently, when someone had to sign for Butcher's mail, Bender was the person there to do this. Bender has, in fact, signed for mail and other deliveries about once a year during the five

years of Butcher's tenancy in the office.

Given these facts, we do not find that the trial court's finding of an implied agency relationship was against the manifest weight of the evidence.

For the reasons stated, the judgment of the trial court is affirmed.

Judgment affirmed.

McNAMARA and EGAN, JJ., concur.