**In re TELESPHERE COMMUNICATIONS, INC., et al., Debtors.**

**ALMAR COMMUNICATIONS, LTD., et al., Plaintiffs,**

v.

**TELESPHERE COMMUNICATIONS, INC., et al., Defendants–Appellees,**

**The CHASE MANHATTAN BANK, et al., Cross–Plaintiffs, Counter–Plaintiffs, and Third–Party Plaintiffs–Appellees,**

v.

**ALMAR COMMUNICATIONS, LTD., et al., Third–Party Defendants–Appellants.**

No. 94 C 3059.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 29, 1997.

Kevin M. Brill, Kevin M. Brill & Associates, Chicago, IL, for third-party defendants-appellants.

Robert Michael Fishman, Andrew Downer Crain, Jay A. Yalowitz, Ross & Hardies, P.C., Chicago, IL, Kevin M. Brill, Kevin M. Brill & Associates, Chicago, IL, for defendants-appellees.

John Collen, Sonnenschein, Nath & Rosenthal, Chicago, IL, Sean McKenna, Marcia L. Goldstein, Kevin P. Hughes, Sharon Youdelman, Well, Gotshal & Manges, New York City, for cross-plaintiffs, counter-plaintiffs, and third-party plaintiffs-appellees Chase Manhattan Bank, Citibank, N.A.

John Collen, Sonnenschein, Nath & Rosenthal, Chicago, IL, Lawrence F. Flick, Blank, Rome, Comisky & McCauley, Philadelphia, PA, Sean McKenna, Marcia L. Goldstein, Kevin P. Hughes, Sharon Youdelman, Weil, Gotshal & Manges, New York City, for cross-plaintiffs, counter-plaintiffs, and third-party plaintiffs-appellees Bell Atlantic Tricon Leasing Corporation.

## MEMORANDUM AND ORDER

MANNING, District Judge.

This matter is before the court on the appeal of Almar Communications, Ltd., et al., (appellants) from the United States Bankruptcy Court for the Northern District of Illinois, where the bankruptcy court granted summary judgment in favor of Telesphere Communications, et. al. (Telesphere) and its secured lenders, appellees herein. *See In re Telesphere Communications. Inc. (Telesphere I),* 167 B.R. 495, 506–07 (Bkrtcy. N.D.Ill.1994). This court has reviewed the judgment of the bankruptcy court, the record, and the briefs of the parties. For the reasons that follow, the decision of the bankruptcy court is reversed and remanded for further proceedings consistent with this memorandum and order.

## JURISDICTION

The United States District Courts have jurisdiction over appeals from final judgments and final orders in bankruptcy cases pursuant to 28 U.S.C.A. § 158(a). On an appeal from the bankruptcy court, the district court "may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree, or remand with instructions for further proceedings." Fed. R. Bankr.P. 8013. In reviewing the decision of a bankruptcy court, this court is constrained to accept the bankruptcy court's findings of fact unless clearly erroneous. *Matter of Salzer,* 52 F.3d 708, 711 (7th Cir.1995); *Matter of Excalibur Auto. Corp.,* 859 F.2d 454, 457 n. 3 (7th Cir.1988). There is no presumption of correctness as to the bankruptcy court's conclusions of law and, as such, this court reviews the issues of law in this case *de novo. Salzer,* 52 F.3d at 711; *Excalibur Auto Corp.,* 859 F.2d at 458.

## BACKGROUND

This case involves the so-called "900 number" telephone business. A 900 number refers to the dialing prefix used in making telephone calls in order to access certain information and entertainment programs. In the 900 number telephone business, customers of local telephone companies can receive information and entertainment programs created by "information providers" (IPs) by placing telephone calls to 900 numbers and paying for these programs on a pay per call charge basis through their regular telephone bills. However, in order to make their programs available nationwide, IPs require access to telecommunication networks in addition to the one provided by the telephone company which supplies services for the region in which they are located. IPs may obtain such access through "interexchange carriers" (ICs).

ICs are essentially middlemen in the 900 number telephone business. Among other things, they generally arrange for the programs created by IPs to be transmitted to local telephone companies. Once such an arrangement has been made, customers of local telephone companies can call 900 numbers in order to listen to the programs offered by the IPs. ICs also generally receive payment for such calls from local telephone companies and, in turn, make payments to the IPs.

This case essentially focuses on the relationship between appellants and Telesphere. Appellants in this case were IPs, while Telesphere was an IC. Appellants developed, promoted, and set prices for telephone programs which they intended to distribute to the public through the use of 900 numbers. Telesphere, however, served as an intermediary between appellants and local telephone companies in two significant respects. First, Telesphere supplied the switching and transmission services—known as "access services"—which linked appellants with the telecommunications networks of local telephone companies located throughout the United States. This link permitted customers of local telephone companies throughout the country to receive the programs offered by appellants by dialing the appropriate 900 number. Second, Telesphere arranged for "billing and collection" services whereby it received payment from local telephone companies—based on the 900 number calls made by customers—and thereafter made payments to the IPs based on the 900 number calls. In one promotional brochure directed to appellants, Telesphere described its function as an intermediary for billing and collection services by stating that it would "handle all the billing ... from collecting fees to sending your revenues."

According to the record in this case, there are few documents which define the relationship between Telesphere and appellants. One such document, however, is a "Letter of Agency" which, in connection with providing access services, Telesphere regularly submitted to IPs with whom it was doing business. The letter calls for execution by the IP and states, in pertinent part, that:

> Effective immediately, [*IP name*] has appointed Telesphere, with offices at Two Mid America Plaza, Suite 500, Oak Brook Terrace, IL 60181, as our authorized agent for matters pertaining to our telephone systems and services provided by your company.

> The scope of this agency shall include, out not be limited to, the ordering or rearrangement of services, assignment of primary interexchange carrier, service requests, disconnection of service and requests as indicated below. This authorization is not exclusive and shall not supersede our own authority or that of any other authorized agents which have been named in the past and whose agency authorization have neither expired nor been rescinded.

Telesphere also periodically issued a series of "revenue policies" which announced Telesphere's billing and collection practices. These revenue policies were unilaterally revised by Telesphere. As noted by the bankruptcy court, the July 1, 1990, revised Revenue Policy is typical of the series and provides, in relevant part:

> (1) that Telesphere would remit the "net proceeds of 900 billings to the Information Provider on a calendar month basis sixty days after the close of the month";

> (2) that Telesphere would provide two sets of reports to each IP: *first*, 30–day reports setting forth the amounts that Telesphere submitted for billing in the preceding month to the local telephone companies for calls made to the IP's numbers, together with the service charges assessed by Telesphere; and *second*, 60–day reports, accompanying payment to the IP, again setting forth total billing and service charges, but also reporting an "Uncollectible Account Summary";

> (3) that Telesphere would initially estimate the percentage of customer billings that would not be collected by the telephone companies according to a sliding scale, based on the average revenue per call; and

> (4) that Telesphere would adjust the uncollectible rate "to the actual rate of uncollectibles as information is received from the various telephone companies."

In addition, Telesphere's revenue policies also made certain additional disclosures to the IPs. In particular, Telesphere expressly reserved: (i) the right to adjust the uncollectible rate (also known as the uncollectible factor); and (ii) the right to enter into contracts "with the various serving telephone companies, independent billing companies and outside collection agencies, when permitted, to actively pursue collections on an independent basis."

Telesphere's dealings with the local telephone companies closely followed the revenue policies issued to the IPs. At its respective switch sites, Telesphere recorded information relating to each 900 number call which was received from a customer of the local telephone companies. Telesphere then prepared computer tapes containing the information necessary for local telephone companies to bill their customers for the 900 number charges, and periodically sent these tapes to the local telephone companies. The local telephone companies reviewed the information received from Telesphere and made certain billing adjustments, which were set forth in their billing and collection agreements with Telesphere. Those adjustments included, *inter alia*, deductions for prior charges determined to be uncollectible (actual uncollectibles) and for funding a reserve for current charges estimated to be uncollectible (estimated uncollectibles). In addition, the adjustments reconciled the actual uncollectibles in each prior month to the estimated uncollectibles for that month. After making the billing adjustments, the local telephone companies sent purchase acceptance reports to Telesphere. Those reports reflected the adjusted balances which the local telephone companies agreed to pay for the 900 number charges reflected on the computer tapes. Shortly after sending the purchase acceptance reports, the local telephone companies sent Telesphere payments in the amount of the adjusted balances. Those payments, however, did not differentiate, and the local telephone companies were not required to segregate, the payment amounts according to amounts owed to individual IPs.

The local telephone companies billed their customers for the 900 number charges by listing the charges as part of the monthly telephone bills sent to their customers. In response, customers paid their local telephone company either in whole, or in part, in the amounts reflected on their telephone bills. The payments made by the local telephone companies to Telesphere, however, were not transmittals of actual funds received from customers, but rather were payments made from the telephone companies' general funds, based on estimates of what the actual 900 number collections would be.

Under the terms of its various revenue policies, Telesphere was under no obligation to establish trust accounts for sums owed to individual IPs, or to segregate the funds received from the telephone companies on account of 900 number collections. Indeed, Telesphere did not deposit payments received from the local telephone companies into trust or segregated accounts. Nor did Telesphere create any trust or segregated accounts for the purpose of making payments to IPs. Rather, Telesphere made such payments primarily from its general operating funds held in a single disbursement account.

This lawsuit was brought by appellants seeking a judgment that they are entitled to the funds received by Telesphere from local telephone companies in connection with 900 number calls made for the programs offered by appellants, i.e., the 900 number proceeds, which Telesphere has not paid to appellants, but which Telesphere pledged to its secured lenders as partial collateral for a failed business venture. In the proceedings before the bankruptcy court, Telesphere and its secured lenders opposed the appellants and, on cross motions for summary judgment, the bankruptcy court granted summary judgment in favor of Telesphere and its secured lenders and against appellants. See *Telesphere I,* 167 B.R. at 506–07. In so doing, the bankruptcy court found that from the undisputed facts in this case, appellants did not exercise ownership or control over the 900 number proceeds and, as such, Telesphere did not hold the 900 number proceeds as either an agent or as a trustee of appellants, but rather that the 900 number proceeds were owned by Telesphere. *See id.*

### ANALYSIS

Before addressing the merits of this case, this court observes the standard for summary judgment applicable in this case. Summary judgment is appropriate when there is no "genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A movant is entitled to summary judgment un-

der Rule 56 only when the pleadings, discovery materials, and moving papers in the record establish that there is no genuine issue of material fact and that the movant is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986).

This court also observes, as did the bankruptcy court and the parties, that Illinois law governs the dispute in the instant case. Section 541(a)(1) of the Bankruptcy Code provides that a debtor's estate includes "all legal or equitable interest of the debtor in property as of the commencement of the case," but that the applicable nonbankruptcy law determines the nature and extent of the debtor's property interests. 11 U.S.C. § 541(a)(1). The United States Supreme Court has recognized that apart from the Bankruptcy Act's provisions invalidating certain security interests as fraudulent, or as improper preferences over general creditors, Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law. *Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979); see also *UNR Industries. Inc. v. Continental Cas. Co.,* 942 F.2d 1101, 1103 (7th Cir.1991). The Seventh Circuit has recognized that issues pertaining to whether the debtor has an interest in property and the nature of any such interest generally requires resort to state law to determine both: (i) whether property is an asset of the debtor to be included in the estate; and (ii) the nature of the property rights in the assets of the estate. *Matter of Jones,* 768 F.2d 923, 927 (7th Cir.1985). In addition, section 541(d) of the Bankruptcy Code provides that if a debtor holds only legal title in particular property and not an equitable interest, that property only becomes part of the estate "to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d). However, as previously mentioned, the nature and extent of a debtor's property interests in an estate is determined by the applicable nonbankruptcy law which, in this case, is the

substantive law of the forum state. *See Burdett v. Miller,* 957 F.2d 1375, 1382 (7th Cir. 1992) (noting that, in the absence of a choice of law objection, the substantive law of the forum state is to be applied in a claim arising under state law). Therefore, the applicable nonbankruptcy law in this case is the substantive law of Illinois.

Turning to the merits of this appeal, appellants put forth two main contentions as to why the bankruptcy court erred in awarding summary judgment in favor of appellees. First, appellants contend that the bankruptcy court erred in finding that Telesphere was not appellants' agent for purposes of billing and collecting revenues relating to the 900 number proceeds. Second, appellants claim that the bankruptcy court erred in finding that Telesphere did not hold the 900 proceeds in constructive trust and could therefore pledge the receivables to its secured lenders. This court addresses each of these contentions in turn.

### I.

■ Initially, appellants contend that the bankruptcy court erred in finding that Telesphere was not appellants' agent for purposes of billing and collecting revenues relating to the 900 number proceeds. In this regard, appellants argue that the bankruptcy court misconstrued the degree of control required for an agency relationship. Appellants posit that the letter of agency, when viewed in connection with the conduct of the parties, the customary practice of billing and collecting methods in the 900 number business, and the allocation of the risk of loss from nonpayment sufficiently establish the existence of an agency relationship for billing purposes.

Appellees, however, argue that the bankruptcy court correctly concluded that there was no agency relationship between appellants and Telesphere for purposes of billing and collecting revenues relating to the 900 number proceeds. In its brief to this court, appellees maintain that "[t]he material undisputed facts conclusively establish that no appellant obtained Telesphere's consent to act as agent and no appellant exercised, or pos-

sessed the right to exercise, control over Telesphere's [billing and collecting] services and the resulting receivables and proceeds— elements that are a prerequisite to a determination of the existence of an agency." In addition, appellees posit that the record establishes that appellants allowed Telesphere the unfettered discretion to treat the 900 number proceeds in whatever manner it chose and, as a result, Telesphere's obligation to pay appellants was not that which an agent owed a principal, but rather can only be characterized as the payment obligation owed by a debtor to its creditor.

In finding that Telesphere was not appellants' agent for purposes of billing and collecting revenues from the 900 number proceeds, the bankruptcy court noted that, under Illinois common law, a party in possession of personal property, including money, is entitled to a presumption of ownership in that property, but that the presumption of ownership is overcome by the existence of an agency relationship whereby the agent was holding the property on the principal's behalf. *Telesphere I*, 167 B.R. at 502. After stating that Telesphere was entitled to a presumption of ownership by virtue of its coming into possession of the 900 number proceeds in the ordinary course of its business, the court concluded that appellants failed to defeat that presumption. *Id.* at 503–05. In particular, the court reasoned that, under its interpretation of Illinois law, ownership and control by a principal over an agent are "essential elements" of establishing an agency relationship and that, in its view, appellants failed to establish that Telesphere exercised ownership or control of the 900 number proceeds as an agent of appellants. *Id.*

■ While this court agrees with the bankruptcy court that Telesphere was entitled to a presumption of ownership in the 900 number proceeds, this court is of the view that there is a genuine issue of material fact as to the existence of an agency relationship between appellants and Telesphere for purposes of billing and collecting revenues and, as such, the bankruptcy court incorrectly entered summary judgment in favor of appellees. It is true that there is a common law

presumption of ownership that a party in possession of personal property holds title to that property. *See Pease v. Dawson*, 197 Ill. 340, 344, 64 N.E. 366, 367 (1902); *Martin v. Martin*, 174 Ill. 371, 374, 51 N.E. 691, 692 (1898); *City of Chicago v. Franklin*, 126 Ill.App.2d 43, 50, 261 N.E.2d 506, 510 (1970). Since Telesphere came into possession of the 900 number proceeds in the ordinary course of its billing and collection services, it is presumed to own the proceeds.

■ That presumption, however, can be overcome if the entity in possession of the personal property was in possession as the agent of a principal. In Illinois, even though possession of personal property raises a *prima facie* presumption of ownership, that presumption is overcome if the person or entity's possession was not as owner of the property, but as an agent for the owner. *See Adams v. Adams*, 181 Ill. 210, 213, 54 N.E. 958, 959 (1899). In this regard, agents generally do not own personal property transferred into their possession by or for the benefit of a principal. *See id; Just Pants v. Bank of Ravenswood*, 136 Ill. App.3d 543, 547, 91 Ill.Dec. 49, 53, 483 N.E.2d 331, 335 (1985); *Kessler, Merci, and Lochner. Inc. v. Pioneer Bank & Trust Co.*, 101 Ill.App.3d 502, 505, 57 Ill.Dec. 58, 428 N.E.2d 608 (1981). However, the burden of establishing the existence of an agency relationship is on the party asserting its existence. *See Schmidt v. Shaver*, 196 Ill. 108, 115–16, 63 N.E. 655, 657 (1902); *Matthews Roofing Company v. Community Bank & Trust Company of Edgewater*, 194 Ill.App.3d 200, 206, 141 Ill.Dec. 143, 148, 550 N.E.2d 1189, 1193 (1990). For the reasons which follow, this court finds that there is a genuine issue of material fact as to whether Telesphere was acting as appellants' agent for purposes of billing and collecting revenues relating to the 900 number proceeds.

■ Even though the bankruptcy court based its decision on this issue on the absence of control and ownership on the part of appellants over Telesphere, this court's examination of Illinois law reveals that control and ownership, although relevant, are merely factors to consider, along with other relevant factors, in determining whether an agency

relationship has been established. The existence of an agency relationship may be established and its nature and extent shown by direct or circumstantial evidence. *See City of Evanston v. Piotrowicz,* 20 Ill.2d 512, 518, 170 N.E.2d 569, 573 (1960); *Tomaso v. Plum Grove Bank,* 130 Ill.App.3d 18, 23, 85 Ill.Dec. 220, 225, 473 N.E.2d 588, 593 (1985). Although an agency relationship need not be based on an express appointment and acceptance, such an express agreement is relevant to establishing the existence of an agency relationship. *See American Environmental. Inc. v. 3–J Co.,* 222 Ill.App.3d 242, 248–49, 164 Ill.Dec. 733, 739, 583 N.E.2d 649, 655 (1991). Other relevant factors include the situation of the parties, their conduct, and other relevant circumstances pertaining to this question. *Piotrowicz,* 20 Ill.2d at 518, 170 N.E.2d at 573; *American Environmental. Inc.,* 222 Ill.App.3d at 248–49, 164 Ill.Dec. at 738–39, 583 N.E.2d at 654–55. Ordinarily, unless there is no dispute regarding the parties' relationship, the existence and scope of an agency relationship are factual questions to be determined by the trier of fact. *See Lang v. Consumers Insurance Service.* Inc., 222 Ill.App.3d 226, 240, 164 Ill.Dec. 825, 830, 583 N.E.2d 1147, 1152 (1991); *Tomaso,* 130 Ill.App.3d at 23, 85 Ill.Dec. at 225, 473 N.E.2d at 593.

In this case, when the business documents defining the relationship between appellants and Telesphere is viewed along with their situation and conduct, a factual question exists as to whether Telesphere was appellants' agent for purposes of billing and collecting revenues relating to the 900 number proceeds. The documents in the record defining the business relationship between Telesphere and the appellants are the "Letter of Agency" and the "revenue policies." The letter of agency indicates that Telesphere would be appellants' agent for "matters pertaining to [appellants'] telephone systems and services provided by [Telesphere]" and that the scope of the agency relationship would not be limited to the services specifically delineated in the letter. Even though the letter does not expressly indicate that such services include billing and collecting services relating to the 900 number proceeds, the "revenue policies" issued by Telesphere indicates that Tele-

sphere reserved the right to "actively pursue collections on an independent basis," and further provides that Telesphere would remit the 900 number proceeds to appellants on a calendar month basis sixty days after the close of each month. The revenue policy explicitly granted Telesphere the discretion to pursue collections on an independent basis, but at the same time required that Telesphere would pay appellants the net proceeds of such collections on a regular schedule. This suggests that, under the documents defining the business relationship, Telesphere's discretion to pursue collections relating to the 900 number proceeds was to do so for the sole purpose of collecting funds in order to pay appellants with whom Telesphere had agreed to be an agent "pertaining to … services provided by [Telesphere]."

The respective situations of appellants and Telesphere relative to the relationship, however, only partially support the existence of an agency relationship for purposes of billing and collecting services relating to the 900 number proceeds. As mentioned, Telesphere was an intermediary between appellants and local telephone companies with respect to supplying "access services" and for the purpose of arranging for billing and collection services. Telesphere's role in this respect was expressly made known to appellants by Telesphere. Indeed, in a promotional brochure directed to appellants, Telesphere expressly described its intermediary function for billing and collection services by stating that it would "handle all the billing … from collecting fees to sending your revenues." The Supreme Court of Illinois has stated that if there is "evidence show[ing] one acting for another under circumstances implying knowledge on the part of the supposed principal," that evidence supports the existence of an agency relationship. *Piotrowicz,* 20 Ill.2d at 518, 170 N.E.2d at 573. Moreover, under Illinois law, an agent, although not expressly authorized, may implicitly be granted broad discretion to act on behalf of a principal. *Matthews Roofing Company,* 194 Ill.App.3d at 206, 141 Ill. Dec. at 148, 550 N.E.2d at 1193. This tends to support the existence of an agency

relationship for billing and collection services relating to the 900 number proceeds.

■ At the same time, as the bankruptcy court noted, the allocation of the risk of loss between appellants and Telesphere tends to negate the existence of an agency relationship for purposes of billing and collecting revenues relating to the 900 number proceeds. Under Illinois law, the principal generally bears the risk of loss. *See Budget Premium Co. v. Inter–Insurance Exchange of Lake States*, 55 Ill.App.2d 277, 281, 204 N.E.2d 310, 312–13 (1965). In this case, the risk of loss was not solely borne by appellants, but rather was generally shared between the parties. Because of the contractual agreement between the appellants and Telesphere relative to Telesphere's obligation to remit payments to appellants on a regular basis, both parties bore part of the risk of nonpayment from local telephone companies. Telesphere had a contractual duty to make regular payments to appellants, regardless of whether it received payment from local telephone companies. Thus, under the contractual arrangement between appellants and Telesphere, if the local telephone companies decided to withhold payments regarding 900 number services, Telesphere was nevertheless obligated to pay appellants according to its revenue policies. Indeed, the record reveals that prior to the bankruptcy filing, Telesphere wrote to appellants and indicated that a failure by the local telephone companies to make appropriate payments for 900 number calls was having an impact on Telesphere's "ability to timely honor [Telesphere's] disbursements to you." As a result, even though Telesphere agreed to handle the billing and collecting services, its obligation to send remittance even in the absence of payment by telephone companies tends to support Telesphere's position that their relationship with appellants was more akin to a debtor-creditor relationship than an agent-principal relationship.

Further, the conduct of appellants and Telesphere relative to the 900 proceeds at issue suggests that their relationship was more akin to a debtor-creditor relationship than that of a principal and agent. Indeed, as the bankruptcy court observed, Telesphere, without objection from appellants, exercised complete control over this money. Telesphere negotiated, without any input from appellants, the terms on which it would receive payment from the local telephone companies. Telesphere did not place the 900 number proceeds in a segregated or trust account for appellants. Since appellants did not have the right to payment on demand, but only the right to receive specified amounts on a regular schedule, Telesphere determined when and how it would make payments to the IPs. Telesphere also determined the extent to which reserves should be established to reflect nonpayment by customers of local telephone companies who had made calls to appellants' programs. In addition, Telesphere determined whether and how to pursue collection efforts against customers who made 900 calls to appellants' programs and failed to make payments to their local telephone companies.

The record therefore reveals that a factual question exists as to whether an agency relationship existed between appellants and Telesphere with respect to the 900 number proceeds at issue in this case. Although the business documents defining the relationship between the appellants and Telesphere as well as the situation of each party relative to their business relationship supports the conclusion that Telesphere was appellants' agent for purposes of billing and collecting revenues relative to the 900 number proceeds, the conduct of the parties suggests otherwise. Therefore, this court remands this cause to the bankruptcy court so that, in its capacity as trier of fact in this case, it may determine whether an agency relationship existed between appellants and Telesphere with respect to the 900 number proceeds at issue in this case, an issue on which appellants will bear the burden of proving at trial.

## II.

Next, appellants contend that the bankruptcy court erred in finding as a matter of law that Telesphere did not hold the 900 number proceeds in constructive trust for appellants. On this issue, appellants maintain that Telesphere had more knowledge

and expertise regarding the collection process from local telephone companies and that Telesphere had more bargaining power in negotiating with local telephone companies than appellants. In their brief to this court, appellants also posit that, in comparison with Telesphere, they were relatively inexperienced in the telecommunications industry and that appellants "were dependent upon Telesphere to perform the billing and collection services that Telesphere held itself out to perform." Appellants argue that these circumstances justify the imposition of a constructive trust on the 900 number proceeds.

Appellees, however, contend that the bankruptcy court correctly determined as a matter of law that Telesphere did not hold the 900 number proceeds in constructive trust for appellants. Appellees maintain that imposing a constructive trust on the 900 number proceeds in the present case is inappropriate because Telesphere did not owe any fiduciary duty to appellants with respect to the 900 number proceeds. In this regard, appellees argue that appellants and Telesphere dealt at arms length and that no fiduciary duty may be implied merely because appellants requested that Telesphere collect money from the 900 number calls made to appellants' programs. Appellees also maintain that even if Telesphere owed a fiduciary duty to appellants with respect to the 900 number proceeds, no breach of such a duty has been established in the present case.

On this issue, the bankruptcy court found that there was no basis for the imposition of a constructive trust in this case. See Telesphere I, 167 B.R. at 506. In support of its decision in this respect, the bankruptcy court relied on its finding of the absence of an agency relationship between appellants and Telesphere. See id. The bankruptcy court reasoned that since, in its view, appellants and Telesphere were not parties to a principal-agent relationship, but rather a debtor-creditor relationship, no fiduciary duty and subsequent breach of such a duty occurred in this case. See id.

■ Unlike the bankruptcy court, this court finds that a genuine issue of material fact exists as to whether there is a basis for the imposition of a constructive trust in this case. Under Illinois law, a constructive trust is created when a court declares a party in possession of wrongfully acquired property as the constructive trustee of that property because it would be inequitable of that party to retain possession of the property. Suttles v. Vogel, 126 Ill.2d 186, 193, 127 Ill.Dec. 819, 822, 533 N.E.2d 901, 904 (1988). The sole duty of the constructive trustee is to transfer title and possession of the wrongfully acquired property to the beneficiary. Id. The Supreme Court of Illinois has recognized that "[a] constructive trust is generally imposed in two situations: first, where actual or constructive fraud is considered as equitable grounds for raising the trust, and, second, where there is a fiduciary duty and a subsequent breach of that duty." Id.

■ Although there is no actual or constructive fraud which could be construed as grounds for imposing a constructive trust in this case, there is a genuine issue of material fact as to whether Telesphere had a fiduciary duty to appellants regarding the 900 number proceeds which was breached by Telesphere's withholding of those funds. An agent has a fiduciary duty to its principal which is limited to actions occurring within the scope of the agency relationship. See Martin v. Heinold Commodities, Inc., 117 Ill.2d 67, 78–79, 109 Ill.Dec. 772, 775, 510 N.E.2d 840, 845 (1987). As previously discussed, there is a genuine issue of material fact as to whether an agency relationship existed between appellants and Telesphere relative to the 900 number proceeds. Since the existence of a fiduciary duty in this case between appellants and Telesphere turns on whether Telesphere was appellants' agent for purposes of billing and collecting services relating to the 900 number proceeds, it is unclear as to whether a constructive trust may be imposed because of the existence of such a duty and subsequent breach by virtue of Telesphere's withholding of the 900 number proceeds. Thus, because there is an issue of fact as to whether appellants and Telesphere had an agency relationship relative to the 900 number proceeds, there is also an issue of fact as to whether there is a basis

upon which to impose a constructive trust in this case.

It is true that, aside from relationships such as that between a principal and agent which automatically gives rise to a fiduciary relationship, the particular circumstances surrounding a relationship may in some situations give rise to a fiduciary relationship. *Santa Claus Industries, Inc. v. First National Bank of Chicago,* 216 Ill. App.3d 231, 238, 159 Ill.Dec. 657, 661–62, 576 N.E.2d 326, 330–31 (1991). In this regard, factors to consider include the respective parties' kinship, age disparity, health, mental condition, education, business experience, and the extent of reliance. *Id.* Although appellants rely upon *Heinold Commodities, Inc.,* to support the existence of a fiduciary relationship in this case because of Telesphere's business experience with local telephone companies and appellants reliance on Telesphere, such reliance is misplaced. In *Heinold Commodities,* the Illinois Appellate Court held that the trial court had not abused its discretion in finding that an investment broker owed a pre-agency duty to a class of commodity options investors to disclose all material facts within its knowledge affecting the subject matter of the agency. *See Heinold Commodities,* 240 Ill.App.3d at 541–42, 181 Ill.Dec. at 382, 608 N.E.2d at 454. In so doing, the court relied on the investors' unique dependency upon the particular knowledge obtained by the investment broker and, more importantly, the fact that during the relevant period, the trading of the London commodity options (LCOs) at issue in that case was exceedingly complicated because of (i) the mechanics of LCOs and the London exchanges; (ii) the volatility of the commodity options market; (iii) the impact of currency conversion rates; and (iv) the differing terminology used among brokers offering LCOs to the public. *Id.* at 541, 181 Ill.Dec. at 380–81, 608 N.E.2d at 454–54.

Unlike *Heinold Commodities,* this is not a case wherein the party asserting a fiduciary relationship was a relative novice in the business and was incapable of attending to business affairs for which it hired another party. This case is a far cry from the situation in *Heinold Commodities.* Nothing in the rec-

ord suggests that appellants were inexperienced in the telecommunications industry. *See DeWitt County Public Building Commission v. County of DeWitt,* 128 Ill.App.3d 11, 26–27, 83 Ill.Dec. 82, 93, 469 N.E.2d 689, 700 (1984) (comparing a purchaser of mortgages and the bank from which the mortgages are purchased, noting that the purchaser is intelligent and has available all information relative to the mortgaged properties). Moreover, there was nothing to prevent appellants from conducting an independent investigation as to the manner in which the telephone companies conducted their billing, collecting, and remittance services relative to entities such as ICs. *Id.* As a result, appellants' reliance on *Heinold Commodities* is without merit; but notwithstanding the above analysis there does exist a genuine issue of material fact as to whether a fiduciary relationship existed between appellants and Telesphere relative to the 900 number proceeds.

### III.

In their brief to this court, appellees argue that even if appellants have sustained their burden of establishing ownership in the 900 proceeds, appellants are nevertheless estopped from claiming any ownership therein. In this regard, appellees maintain that under Illinois law, appellants can be estopped by their own silence. In appellees' view, "the undisputed facts dispositively indicate that appellants could not have intended to maintain any ownership interest in the receivables given their uniform acquiescence in Telesphere's treatment of the 900 receivables and proceeds."

In opposition to appellees' claim in this respect, appellants argue that appellees have not established a basis for a court to impose estoppel by silence. Appellants contend that appellees have not introduced any evidence proving that appellants knew that their ownership rights in the 900 proceeds were being challenged by Telesphere. In addition, appellants maintain that appellees cannot prove that Telesphere was ignorant of the fact that appellants claimed ownership in the 900 proceeds. As such, appellants posit that since appellees have not come forward with any evidence establishing either of these two es-

sential elements of an estoppel claim, their claim should fail.

 This court finds that there is a genuine issue of material fact as to whether appellants may be estopped from claiming ownership in the 900 number proceeds. Under Illinois law, estoppel occurs when:

> " '[A] party by his statements or conduct leads another to do something he would not have done but for the statements or conduct of the other, the one guilty of the expressions or conduct will not be allowed to deny his utterances or acts to the loss or damage of the other party. The party claiming the estoppel must have relied upon the acts or representations of the other and have had no knowledge or convenient means of knowing the true facts.' "

*Perlman v. First National Bank of Chicago,* 15 Ill.App.3d 784, 795, 305 N.E.2d 236, 245 (1973) (quoting *Hickey v. Illinois Central R.R. Co.,* 35 Ill.2d 427, 447, 220 N.E.2d 415, 425 (1966)). Where silence is the ground of the estoppel it is essential that the party estopped should have knowledge of the facts and the other party be ignorant of the truth and be misled into doing that which he would not have done except for such silence. *Id.* Although, as indicated in the discussion of the agency issue, the record suggests that Telesphere relied on what it perceived as appellants failure to exercise control over the 900 number proceeds, appellees have not produced any facts suggesting that appellants knew that Telesphere was challenging the ownership rights of appellants in the 900 number proceeds, or that appellees did not have any knowledge or convenient means of knowing of appellants' position relative to the 900 number receivables. In addition, appellees have not come forward with any facts suggesting that appellees were misled into exercising ownership over the 900 proceeds as a result of appellants' failure to exercise control over the 900 number proceeds, *i.e.,* appellants' silence. Consequently, there exists a genuine issue of material fact as to whether appellants are estopped from asserting ownership in the 900 proceeds.

### CONCLUSION

For the foregoing reasons, the bankruptcy court's judgment is reversed and remanded for further proceedings consistent with this memorandum and order.